### The Kenwood Hotel Company, Plaintiff in Error, v. J. H. Hiland, Defendant in Error.

### Gen. No. 14,874.

LANDLORD AND TENANT—*when claim for liquidated damages for hold-over not sustained.* The law will not uphold or justify a landlord in inducing a tenant to remain in possession of premises after the expiration of his lease and then enforce against such tenant liquidated damages beyond the rental value of the premises for such withholding of the premises.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed February 15, 1910.

**Statement by the Court.** On August 31, 1907, The Kenwood Hotel Company, a corporation, filed its action in the Municipal Court of Chicago against J. H. Hiland, defendant, to recover ''rent or liquidated damages for withholding possession of a suite of apart-

ments'' after defendant's lease of the same had expired.

The cause was tried before the court and a jury. The jury returned a verdict in favor of the plaintiff for $131.98. After overruling a motion for a new trial by the plaintiff, judgment was entered on the verdict against the defendant, which the plaintiff by this writ of error seeks to reverse.

It appears from the record that the defendant Hiland occupied a suite of apartments in a building on Forty-seventh street and Kenwood avenue, Chicago, known as ''The Kenwood,'' under a written lease from the plaintiff, dated August 3, 1903, for a term ending August 31, 1906, at a monthly rental of $125. By the terms of the lease the lessee covenanted to keep the premises in good repair, and upon the termination of the lease to yield up the premises to the plaintiff in good condition and repair, and, failing so to do, to pay as liquidated damages for the whole time such possession was withheld the sum of $10 per day. By a clause appearing on the back of the lease, permission was given to the defendant to make certain alterations, upon condition that he restore the premises to their former condition at the expiration of the lease, if the lessor should so require.

Some time in August, 1906, in a conversation in regard to a new lease, the plaintiff, through its manager, Tyson, informed the defendant that the rent would be advanced to $175 per month. Defendant told Tyson that the amount demanded was too much and that he would not pay it. Mr. Tyson replied that under his instructions he could not change the amount without consulting his principals. Defendant Hiland then wrote to the plaintiff and received a reply. He also appointed his son, Fred S. Hiland, as his agent to negotiate in reference to a renewal of the lease.

Fred S. Hiland continued the negotiations and offered $150 a month for the premises. Mr. Tyson, to whom the offer was made, said he thought that would

be satisfactory, and that he would recommend it, and would take it up with the people he was working for and let Mr. Hiland know. F. S. Hiland inquired of Tyson two or three times in regard to the matter and was informed by Tyson that he had not learned anything, but he expected to hear from his people in a few days. In the last week in August defendant's son urged Tyson to hurry the matter up so that if no adjustment was made, defendant could look up another apartment and move out. Mr. Tyson promised to do so.

On September 1, 1906, the plaintiff delivered to the defendant a written demand for immediate possession of the premises. The negotiations continued, however, until along about the first or second week in September, when Mr. Tyson said to defendant's son that the final conclusion was that the rent would be $175 a month, and the negotiations were then dropped. Defendant moved out of the apartment September 26, 1906.

The defendant made the alterations specified in the lease, and also certain other alterations for which he claimed he had the consent of plaintiff, but that was disputed on the trial. After vacating the premises the defendant, at his own expense, restored the premises to their former condition in regard to all the alterations made by him. The work of restoration was completed about November 10, 1906.

When the defendant made the alterations in the premises he arranged with Mr. Borgo, the then manager of plaintiff, to store and care for the material to be removed until it was necessary to use it in the restoration, and the material was delivered to plaintiff. When the restoration was commenced there was some delay in delivering the material to defendant and only a part of the materials was delivered by the plaintiff to the defendant. "The trim, bays and castings and jams were short" and also some doors. Mr. Tyson was asked to furnish them, but refused, and

these materials had to be prepared specially. It took nearly two months to get some of the hardware. The work of restoring the alterations specified in the lease, and also the other alterations, was carried along at the same time as one job or piece of work.

Before the trial of the case was commenced the defendant tendered to the plaintiff $125 as rent for September, $25.30 for meals and incidentals and $5, the amount of costs then assessed in the case, making a total of $155.30, against which a credit of $23.32 is admitted in the plaintiff's bill of particulars, thus making the net tender $131.98. This was deposited with the clerk of the court for the plaintiff.

GEORGE INGERSOLL, for plaintiff in error; JOSEPH CUMMINS, of counsel.

JOHN A. RUSSELL and CARL S. JEFFERSON, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The jury were instructed that if they believed from the evidence that prior to the expiration of the lease negotiations were entered into between the parties for the extension of the lease, and that plaintiff led defendant to believe that the premises would be leased to him upon terms which he had offered, and that before the negotiations were terminated the lease expired, and that plaintiff then notified defendant that he could not continue to occupy the premises upon the terms which he proposed, then the defendant would have a reasonable time within which to vacate the premises and make the repairs provided in the lease; and if the jury believed from the evidence that the negotiations for the extension of the lease were not completed until the 10th or 15th of September, or whatever time the jury believed from the evidence they were terminated, then the defendant would have

a reasonable time thereafter within which to vacate the premises and make the restorations, and during such reasonable time he would not be subject to the payment of the $10 a day provided in the lease, but he would only be liable for the rental at $125 per month; and what would be a reasonable time under the circumstances after he was notified by the plaintiff that the lease would not be extended, was for the jury to determine under all the evidence in the case.

The court further instructed the jury that after the expiration of such reasonable time from such notification, defendant would be liable to the plaintiff at the rate of $10 per day for all the time, if any, which he occupied the premises, either for living purposes or for restoration.

The plaintiff does not complain of the instructions, but it is contended that the verdict is contrary to the evidence and the instructions.

We think the jury were warranted by the evidence in finding that the defendant was led to believe, prior to the expiration of the lease, by the negotiations which were entered into, that the premises would be relet to him upon terms which he had offered. The jury were also justified in finding from the evidence that the negotiations continued until some time about the middle of September following the expiration of the lease when the plaintiff notified defendant that he could not occupy the premises at a rental of $150 per month proposed by him.

The jury evidently found that under the circumstances shown by the evidence, including the fact which was not disputed, that the plaintiff had agreed to store and preserve the materials which were removed either under the provisions of the lease or by the consent of the plaintiffs, and that a portion of such materials was not redelivered for the purpose of restoration, and that there was delay in redelivering that portion which the plaintiff finally produced for that purpose, the defendant was not guilty of any un-

reasonable delay in the restoration, or in the vacation of the premises after notification by the plaintiff that the lease would not be renewed on the terms proposed by the defendant. If they so found, then under the instructions of the court they could not and did not charge the defendant at the rate of $10 per day from September 1st to November 10th. We find no ground in the evidence for saying that the jury were wrong in so finding.

The plaintiff, upon the removal of the defendant from the apartment, had the right to re-enter upon the premises and to proceed with the work of restoration, if the defendant was delaying the commencement of that work too long, and to charge the expense of the work to the defendant. We find nothing in the record which justifies the conclusion that the plaintiff either objected to the delay as unreasonable at the time, or took any steps to do the work or hasten its completion. The record is silent on this point, and the jury might infer from this circumstance in connection with the evidence that the defendant, Hiland, acted in good faith in making the restoration, and commenced the work and carried it on with reasonable dispatch; and that the plaintiff caused delay in not producing the material stored with it.

We cannot accede to the contention of plaintiff that the demand for immediate possession served upon the defendant on September 1st terminated in legal effect the negotiations then pending for a renewal of the lease. We do not see that it had any effect whatever. Defendant's proposition to pay $150 a month was then pending. There had been no response to it. Defendant's son, after the demand was served, continued to urge an early response to it, and Tyson replied that he was expecting to receive directions in regard to it in a few days. He did not receive and communicate a final answer until about the middle of September. These facts are not disputed in the record. The negotiations, therefore, did not, as a matter of fact,

cease and determine on the service of the notice or demand.

Nor can we agree with the contention that the negotiations for a new lease did not affect plaintiff's rights under the lease, because they resulted in no agreement. Prior to the expiration of the lease a demand was made by the plaintiff on the defendant for an increase rental after the expiration of the lease. Defendant refused to pay the amount demanded, but offered to pay $150 per month. Defendant, as the undisputed evidence shows, was advised by plaintiff's manager, who was in charge of the hotel and the business of renting apartments therein, that plaintiff would negotiate for a new lease and that the price offered by defendant for a new lease would be satisfactory. No final answer, however, was made by the plaintiff until the middle of September, when the offer of defendant was definitely declined. Defendant was led to believe by the plaintiff, through its manager and the negotiations pending at the time of the expiration of the lease, that his offer would be accepted, and he was induced thereby to remain in possession of the premises beyond the expiration of the lease, and to delay the commencement of restoration work. The law will not uphold or justify a landlord in thus inducing a tenant to remain in possession of premises after the expiration of his lease, and then enforcing against the tenant liquidated damages beyond the rental value of the premises for such withholding of the premises. This would be allowing a landlord to take advantage of his own acts, by means of which his tenant was induced to place himself in a position subjecting him to a penalty for violating a covenant of his lease. While such an act or cause of action on the part of the landlord might not be a defense to an action for possession, it is a defense, in our opinion, to the recovery of any amount beyond the rent reserved in the lease, or the rental value of the premises. The case of Poppers v. Meagher, 148 Ill. 192, relied upon by the plaintiff, is

so different in its facts, that the law of that case is not applicable to this case. In that case the landlord did nothing to induce the tenant to hold over, or change his position in any particular. He held over for the purpose of making a sale of his property to the new tenant, if it obtained a lease.

What we have said above applies, we think, to the contention of the plaintiff as to the measure of damages for the use of the premises for the purpose of repairs.

We see no necessary conflict between the instructions of the court and the verdict of the jury. The findings of the jury on the questions of fact involved may have, and doubtless did, lead the jury under the instructions to the conclusion reached.

We are not warranted, upon the evidence in the record, in setting aside the verdict. We think substantial justice has been done in the case.

The motion to strike the bill of exceptions from the record, which was reserved and taken with the case, is overruled.

The judgment is affirmed.

*Affirmed.*