Joseph H. Beuttas, Appellant, v. Edward A. Garvey, Trading as Ed. A. Garvey & Company, Appellee.

Gen. No. 36,044.

Opinion filed April 11, 1933. Rehearing denied April 24, 1933.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, for appellant; I. E. FERGUSON and JESSE H. BROWN, of counsel.

JOHN A. PAKENHAM, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Plaintiff prosecutes this appeal to reverse a judgment for costs against him, entered by the superior court in an action of assumpsit on March 26, 1932,

following the verdict of a jury finding the issues in defendant's favor.

The action, commenced on March 20, 1928, is to recover damages, in the sum of $7,575, plus certain interest, for defendant's "holding over" after a claimed termination by plaintiff of a written lease of which defendant was the lessee in possession. To plaintiff's declaration, consisting of a special count and the common counts, defendant filed a plea of the general issue and supported the same by a second amended affidavit of merits. On July 12, 1929, on plaintiff's motion, the court struck the affidavit "for insufficiency," defaulted defendant for want of an affidavit of merits and, it appearing that plaintiff admitted a credit of $4,513, "paid to him by the Maryland Casualty Co.," entered judgment against defendant for $3,539.12. From the judgment defendant appealed to this court and on April 22, 1930, that judgment was reversed and the cause remanded for reasons stated in an unpublished opinion hereinafter referred to. (*Beuttas v. Garvey,* 257 Ill. App. 628.)

In the special count plaintiff alleged in substance that on May 15, 1924, the written lease (copy attached) was executed and delivered by the executors and trustees under the last will of Henry Sampson, deceased, as lessors, wherein they demised to defendant, as lessee, the first floor of the building known as 329–35 Plymouth court, Chicago, for the term from May 1, 1925, to April 30, 1928, at a rental of $450 a month; that by a rider, attached to and made a part of the lease, the lessors reserved the right to cancel the lease on May 31, 1925, "or on the last day of any calendar month thereafter during the term of the lease, by giving to the lessee six (6) months' notice in writing of their election so to do, provided that the building in which the premises were situated or the ground on which it stood, or both, should be sold or leased for a

term of not less than twenty (20) years, or if the building was to be demolished''; that by the eighth clause of the lease defendant, as lessee, covenanted with the lessors that he, ''at the termination of said lease by lapse of time *or otherwise*,'' would yield up immediate possession of the premises to the lessors, and, failing so to do, would ''pay as liquidated damages, for the whole time such possession should be withheld, the sum of twenty-five ($25) dollars per day''; that on July 14, 1926, plaintiff purchased from the lessors their interests in the lease and the building and ground, and the lease was duly assigned to him; that on July 17, 1926, in accordance with the terms of the lease, ''six (6) months' written notice of election to terminate said lease was served upon defendant, and said lease was terminated *as of January 31, 1927*''; that notwithstanding defendant's covenants, he did not yield up possession of the premises, but ''wholly refused so to do and wrongfully withheld possession from plaintiff in manner and form as hereinafter alleged''; that on February 24, 1927, plaintiff instituted an action in forcible detainer against defendant in the municipal court of Chicago, entitled *Beuttas v. Garvey,* No. 1,573,214, in which action plaintiff, on April 27, 1927, recovered a judgment against defendant for the restitution of the premises and from which judgment defendant appealed to this court; that thereafter on January 30, 1928, the judgment of the municipal court was here affirmed (see *Beuttas v. Garvey,* 247 Ill. App. 630); that pending that appeal defendant for a time continued to withhold possession of the premises, and ''plaintiff was wrongfully prevented from obtaining the possession thereof for the period from February 1, 1927, to December 1, 1927 (i. e., for 10 months), upon which last mentioned date defendant vacated the premises''; that thereby plaintiff sustained damages ''which had previously been liquidated between the parties

hereto, for the whole time such possession should be withheld by defendant, at the sum of $25 for each and every day, which said liquidated damages amount to $7,575, together with interest on each of said $25 installments from the day when the same became due, as aforesaid, at 5 per cent per annum''; that by reason of the foregoing, defendant became indebted to plaintiff in said sum and interest, and being so indebted promised to pay the same; but that, although often requested, defendant has refused to pay the same or any part thereof; to plaintiff's damage, etc. Accompanying the declaration is an affidavit of claim to the effect that plaintiff's demand is for damages sustained by plaintiff by the wrongful withholding of the premises ''for a period of 303 days,'' said damages ''having theretofore been liquidated by said lease at the sum of $25 per day''; and that said damages amount to $7,575, plus interest, etc.

From the copy of the lease, attached to the declaration, it appears that it is on a printed form filled in by typewriting, that it contains covenants common in such instruments, and that in the eighth clause (printed in small type) defendant, as lessee, covenanted and agreed with the lessors as follows:

*"Eighth.* At the termination of this Lease, by lapse of time *or otherwise,* to yield up immediate possession to said party of the first part (the lessors), and failing so to do, to pay as *liquidated damages,* for the whole time such possession is withheld, the sum of twenty-five ($25) dollars per day.''

The said rider, expressly made a part of the lease and signed by the lessors and defendant as lessee, is in typewriting and is as follows:

''The lessors reserve the right to cancel the within lease on May 31, 1925, or on the last day of any calendar month thereafter during the term of the lease, by giving to the lessee six months' written notice of their election so to do *provided* that the building in

which the premises are situated or the ground on which it stands, or both, shall be sold or leased for a term of not less than 20 years, *or if the building is to be demolished,* and *provided further* that the lessors shall pay *to the lessee,* in the event of such cancellation during the first year of the term of the lease, the sum of $1,000, and if during the second year of the lease the sum of $500, it being understood and agreed that said sum shall be paid to the lessee provided he shall not be in default of any of the covenants of this lease and after lessee shall have delivered up peaceable possession of the premises within the time specified in such notice of cancellation.''

It will be noticed that by the terms of the rider the right of the lessors to cancel the lease on six months' written notice is predicated upon certain conditions or provisos, viz. (a) that the building or ground, or both, shall be sold or leased for a term of not less than 20 years, or (b) if the building is to be demolished. It also will be noticed that *in the rider* there is no provision for liquidated damages, in case the lessors elected to cancel the lease under the provisions of the rider and in case the lessee failed to surrender possession of the premises when the cancellation should become effective. Nor is there any reference made in the rider to said eighth clause of the lease.

In defendant's said affidavit of merits (which the superior court originally struck from the files for insufficiency) he alleged six different grounds of defense in substance as follows:

1. That he does not owe plaintiff the sum of $25 per day for the time he occupied the premises after the alleged termination of the lease, and that the Maryland Casualty Co. has paid to plaintiff all sums owing by him for rent and damages for the occupancy of the premises.

2. That the statements in plaintiff's notice of termination of the lease (viz., because of the sale and pro-

posed demolition of the building) were untrue or that plaintiff after giving such notice abandoned his intention of such sale and proposed demolition; that before the date of the termination of the lease, as mentioned in said notice, plaintiff, by an agent, notified defendant to "ignore said notice of termination"; and that before said date "plaintiff entered into a new lease with this defendant for *additional space* in the same building which lease was not to expire until the time for the expiration of the original lease, and plaintiff accepted rent from this defendant for said additional space until the expiration of said new lease, and long after the date set for the termination of the original lease."

3. That because of the notice given to defendant by plaintiff's agent (that said notice of termination was to be ignored), defendant in good faith did not surrender possession of the premises on the date stated in the notice of termination and remained in possession.

4. That before the said termination date had arrived, an agent of plaintiff informed defendant that plaintiff would be willing to have defendant remain in possession under the original lease if he would pay a higher rent, and defendant alleges the notice of termination was not given in good faith.

5. That the sum of $25 a day, as provided in a covenant in the original lease, is not liquidated damages but is a penalty, for which defendant is not liable under the facts shown in connection with the alleged termination of the lease.

6. That the notice of termination was given by plaintiff under the provisions of the rider attached to the lease, and that the covenant in the lease (providing for $25 a day as liquidated damages) conflicts with the provisions in said rider.

In our opinion on the prior appeal, wherein the former judgment in favor of plaintiff was reversed and

the cause remanded, we held that defendant's affidavit of merits "stated *at least* two good defenses" (viz., those stated in the second and fifth paragraphs), and that it was error for the court to strike the affidavit and enter judgment against defendant as in case of default. In the course of the opinion we said:

"If as stated in the second ground of defense plaintiff withdrew notice of the termination of the lease and defendant was thereby induced to hold over, defendant was entitled to set it up as a defense to any damages in excess of unpaid rent. As said in *Kenwood Hotel Co. v. Hiland,* 153 Ill. App. 108, 114, the law will not uphold or justify a landlord in inducing a tenant to remain in possession of the premises after the expiration of the lease, and then enforce against him liquidated damages beyond the rental value of the premises for withholding the same. The court also said that while such an act on the part of the landlord might not be a defense to an action for possession, it is a defense to the recovery of any amount beyond the rent reserved in the lease, or the rental value of the premises. On the principles there stated we think the second ground of defense was good as to any damages in excess of unpaid rent. . . .

"The fact pleaded in the declaration that plaintiff obtained possession of the premises in question under a judgment in a forcible detainer proceeding that was affirmed by this court did not, as argued, constitute *res adjudicata* of the question of damages in excess of unpaid rent. The issues in the two causes of action are entirely different.

"The fifth defense was also good. It cannot be said as a matter of law that the provision for liquidated damages should not be interpreted as a penalty. The language of the contract in that respect is not of itself conclusive. (*Advance Amusement Co. v. Franke,* 268 Ill. 579, 581.) As said in that case (p. 582) courts will look to see the nature and purpose of fixing the amount

of damages to be paid, and if it appears to have been inserted to secure the prompt performance of the agreement it will be treated as a penalty and not more than actual damages proved can be recovered. (Citing *Westfall v. Albert,* 212 Ill. 68, 74.) We do not think without any evidence the court could say merely from an inspection of the lease, made a part of the declaration, that the damages sustained from holding over should necessarily be construed as liquidated. There is nothing therein to indicate that the actual damages could not be ascertained. In doubtful cases the courts are inclined to construe the stipulated sum as a penalty. (*Iroquois Furnace Co. v. Wilkin Mfg. Co.,* 181 Ill. 582, 602.) Whatever the ground for termination of the lease, evidence might disclose no actual damages, or if so, much less than those fixed in the lease.''

During March, 1932, long after the mandate of this court had been filed in the superior court, the cause there came on for trial before a jury. Plaintiff called his ''real estate manager,'' Charles M. Dockhum, and the defendant, Garvey, as witnesses, and also introduced in evidence the lease sued upon; the written notice to terminate the lease, dated July 15, 1926; a certified copy of the judgment of the municipal court against defendant in the forcible detainer proceeding, entered April 27, 1927; and a certified copy of the judgment of the Appellate Court, entered January 30, 1928, affirming said judgment in the forcible detainer proceeding. The material provisions of the lease have heretofore been set forth. The written notice to terminate the lease, which defendant testified he received ''during the latter part of July, 1926,'' is signed by ''Alicia L. Byrne'' and by ''Robt. Shanklin & Co., as Agents,'' is addressed to defendant, and is as follows:

''You are hereby notified that the building known and described as 329–35 Plymouth Court, Chicago (whereof you occupy the first floor), and the ground

on which said building stands, *has been sold,* and that *said building is to be demolished.*

"You are further notified that, by reason of said sale and the *proposed* demolition of said building, and in accordance with the terms and conditions of the lease of said first floor, executed . . . by you as lessee, I hereby exercise my right to cancel and do hereby cancel said lease, such cancellation to become effective and *said lease to be terminated on January 31, 1927.*

"Any sum of money due you under the terms of said lease by virtue of this cancellation will be paid you in accordance with the terms of said lease.

"You are therefore notified to vacate and surrender up possession of said premises on said January 31, 1927."

By the copy of the judgment of the municipal court it appears that the court, following the verdict of a jury, adjudged that plaintiff "have and recover from defendant (Garvey) the possession of the premises (describing them) and that a writ of restitution issue." It further appears that from that judgment defendant duly perfected an appeal to the Appellate Court by the filing of an appeal bond in the sum of $5,000, signed by him and by the Maryland Casualty Co., as surety; and that the bond was conditioned (in accordance with section 19 of the Forcible Entry and Detainer Act, Cahill's St. ch. 57, ¶ 20) that defendant *"pay all rent now due or that may become due before the final determination of this suit, and also all damages and loss which the plaintiff has sustained or may sustain by reason of the withholding of the premises in controversy,"* etc.

During the introduction of plaintiff's case, defendant's attorney admitted that defendant, notwithstanding the notice to terminate the lease on January 31, 1927, did not vacate the premises on that date, but continued to occupy the same until November 30, 1927,

a period of 10 months, and that defendant during that period did not pay, although he tendered it, the stipulated monthly rent of $450. He further stated that the rent for the 10 months, amounting to $4,500, had, since defendant's vacation, been paid to plaintiff by the Maryland Casualty Co. for defendant.

Plaintiff's witness, Dockhum, testified that he, as plaintiff's agent, received from defendant the rent due for the month of January, 1927; that after January 31, 1927, he received no moneys for rent of the premises in question from *defendant;* that after the forcible detainer litigation had finally been decided, and "during April, 1928," he, as plaintiff's agent, received from the Maryland Casualty Co. (surety on defendant's appeal bond), "on account of defendant's possession of the first floor of the building, a few dollars over $4,500"; that, as he remembers it, "the amount was $4,527," but that he does not know "what the odd amount was for"; and that said $4,527 was credited to defendant "on account of rent." He further testified that plaintiff acquired the property and building "early in 1926"; that at that time Shanklin & Co. were the agents of the property and collected the rents; that they ceased to be such agents about December 1, 1926; that after plaintiff acquired the property "a lease was made to defendant for *additional space* in the building, other than the first floor, namely Room 304"; that the monthly rent for said space was $15; that the term expired on April 30, *1928;* but that he believes the defendant vacated said space on November 30, 1927, at the same time that he vacated the first floor.

Thereupon plaintiff's attorney made certain computations as to the net amount that plaintiff was entitled to recover on his theory. Without offering any proof of *actual* damages suffered by plaintiff because of defendant's "holding over" and occupying the premises after January 31, 1927, and until Novem-

ber 30, 1927, he claimed that said net amount was $3,802.48, and that that sum was arrived at by charging, because of the provisions of the rider and of the eighth clause of the lease, *liquidated damages* at $25 per day for 303 days, or $7,575, and deducting therefrom the amount of $4,527, as paid to plaintiff by the Maryland Casualty Co. on defendant's behalf, and making certain charges for interest. And thereupon plaintiff first rested his case.

Upon defendant moving for a directed verdict in his favor, on the theory that plaintiff had not made out a sufficient-prima facie case, there followed considerable discussion before the court, and not in the jury's presence. The court, having before him a copy of the opinion of this court on the former appeal and treating the same as determining the law to be applied to the case, stated to plaintiff's attorney: "I do not think you have made out a prima facie case; . . . I will give you a chance to prove what your damages are, if you want to. I hold that the Appellate Court in this case has decided that mere proof of the lease does not prove the damages. . . . The case will be reopened to allow you to show what your damages are." Thereupon plaintiff's attorney stated that he desired to introduce further evidence, and, the jury being recalled, plaintiff testified as a witness in his own behalf, and called William Gallauer, a real estate expert, who testified in substance that the first floor space of the building occupied by defendant had an area of 6,300 square feet, and that, in his opinion, during the years 1926 and 1927, the fair and reasonable rental value of that space was "from $1.50 to $1.75 per square foot per year." Plaintiff's testimony as to rental value was to the same effect. This was the only testimony offered by him bearing on the question of his actual damages. Plaintiff further testified that his business was that of a contractor,

and engaged in the buying, operating and selling from time to time of various buildings in Chicago; that he purchased the property and building in question in July, 1926; that thereafter he had a few conversations in his office with defendant; that he had one during November, 1927, just prior to defendant vacating the premises, but that he "does not recall" that he then said to him that "he could remain in that space at $450 per month *provided* he would execute a lease with a *60-day* cancellation clause"; that he recollects that after he purchased the building, and *after* said termination notice had been served on defendant, he leased to defendant "some *additional space* on a different floor of the building"; but that he "can't tell how long defendant paid rent for that additional space." No evidence whatever was introduced by plaintiff tending to show that at the time said notice of termination of the lease was served upon defendant in July, 1926, or at any time thereafter, plaintiff had any intention of causing the building in question to be demolished.

Thereupon plaintiff again rested his case in chief. Defendant's renewed motion for a directed verdict in his favor was denied and he was directed to proceed and introduce evidence to substantiate his defenses as set forth in his affidavit of merits. Thereupon defendant testified that he became a tenant in the building under the lease sued upon in May, 1925; that he conducted his printing business on the first floor; that about the end of July, 1926, after he had been served with the written notice of termination of the lease, he had an interview with Royal D. Smith, manager of the building under Shanklin & Co.; that "Mr. Smith then told me that *they had decided to keep the building instead of tearing it down as originally planned and that he wanted me to remain in the premises"*; that at Smith's request he returned to him by mail the original

notice of termination; that in the following November,
after negotiation with plaintiff's agents, Shanklin &
Co., he received another lease for *additional* space on
another floor of the building, expiring at the same time
as his lease of the first floor, viz., April 30, *1928;* that
the stipulated rent for this additional space was $15
per month; and that he paid that rent until he moved
out of the building in November, 1927. (The said lease
was introduced in evidence; it is signed by plaintiff by
"Robt. Shanklin & Co., Agts.," and by defendant, as
lessee; it is dated November 27, 1926; it demises
"Room 304—No. 329 Plymouth Court"; its term is
from December 1, 1926, to April 30, *1928;* and it con-
tains a provision whereby the lessor [plaintiff] "re-
serves the right to terminate this lease by giving lessee
sixty [60] days' previous written notice *in the event
lessor decides to* erect a building, or leases entire prop-
erty to one tenant or effects a sale of the property.")
Defendant further testified:

"I first met Mr. Beuttas in April, 1927, in the Munic-
ipal court. I next saw him in his office in July or
August, 1927, and had a conversation with him. I
asked Beuttas just what he wanted, whether the space
or his money. . . . He was suing for the premises,
yet he wanted me to remain there. . . . Beuttas said
he was only anxious to obtain *a shorter cancellation
notice* in *all* of his leases in the building, that he was
not interested in my vacating the premises, but would
give me *a new lease at the same rate,* provided I gave
him a *60-day* cancellation clause. I told him that was
impossible, because printing machinery and our line of
business could not be moved within 60 days, so he in-
creased it to 90 days, and said he would send Mr.
Manning (his then agent) over with a lease. Manning
brought me the new drafted lease in September, 1927,
and told me that, for a consideration of *$750 per month,*
he would allow me to use the *second* floor *and* the

premises that I then was occupying. I told Manning I would take it under consideration. I had a later conversation with Manning and told him that I would not sign the proposed new lease, because I had just entered into an agreement with the Lambert Tree estate to move into one of their premises on Wacker Drive at the same rental that I had been paying at Plymouth Court. . . . After the municipal court judgment of April 27, 1927, I could not vacate on 24 hours' notice, and I had to take an appeal. I knew that Beuttas wanted me to get out then. . . . When I signed the original lease on May 15, 1924, I never noticed the clause as to the $25 per day as liquidated damages for such time as I should retain possession after termination of the lease."

In rebuttal plaintiff gave further testimony and he called said Royal D. Smith, who testified that he "does not recall" having had any conversation with defendant concerning the written notice of termination of the lease, served on defendant in July, 1926, or that defendant returned the original notice to him by mail; and that he never told defendant that Beuttas had changed his mind about the notice, or that defendant might stay on in the building without regard to the notice. Plaintiff denied having such conversation with defendant in July or August, 1927, or later, as testified to by defendant, although he admitted having talked with defendant while the appeal from the municipal court judgment was pending. He further testified:

"I never told Garvey that I would send Manning to negotiate a new lease with him, or that I would be willing to lease to Garvey the first floor and a part of the second floor of the building at $750 per month. That proposition did not *originate* with me. Garvey came to Manning and made that proposal, and, when Manning asked me whether I would do that, *I said I would, providing* the new lease contained a *60-day or*

*a 90-day cancellation clause.* No such lease, however, was ever made.''

At the conclusion of all the evidence plaintiff's motion for a directed verdict in his favor in the sum of $3,802.48, was denied by the court, and, after the case had been argued by the attorneys for the respective parties and the court had instructed the jury, a verdict was returned and a judgment entered in favor of defendant, as first above mentioned.

It is contended by plaintiff's counsel that the trial court erred ''In holding that the agreement of the parties (that in case of a holdover after termination of the lease the defendant should pay $25 a day) was an agreement for a penalty and not for liquidated damages.'' It is a sufficient answer to the contention to say that the present record does not disclose that the trial court made such a holding.

It is also contended that, because of the rider and the eighth clause of the lease, and the written notice of termination of the lease duly served on defendant, plaintiff ''made out a sufficient prima facie case of damages'' by introducing said lease and notice in evidence and showing that after the termination date defendant had withheld possession of the premises for a period of 303 days, and that, after plaintiff had first rested his case, the court erred in compelling plaintiff to make some proof of actual damages. And it is argued that the court by its ruling ''relieved defendant of the burden of proving an affirmative defense,'' (that the covenant in the eighth clause really provided for a penalty rather than for liquidated damages). We find no merit in the contention or argument. The mentioned affirmative defense is only one of several pleaded defenses, as stated in defendant's affidavit of merits. Furthermore, plaintiff acquiesced in the court's ruling and introduced additional evidence as a part of his prima facie case and the court did not

relieve defendant of the burden of proving his pleaded defenses.

Equally without merit in our opinion, is counsels' further contention that, after plaintiff had made his prima facie case and while defendant was introducing evidence to prove his defenses as pleaded, the court erred in admitting any of defendant's offered evidence which tended ''to challenge the good faith of plaintiff's termination of the lease.'' It is clear to us that if plaintiff's attempted termination of the lease was not done in good faith the provisions of the eighth clause of the lease, providing for liquidated damages beyond the stipulated rent, could not properly inure to plaintiff's benefit. And we do not think, as counsel further contend, that the judgment of the municipal court in the forcible detainer proceeding can properly be considered as *res adjudicata* as to the question, involved in the present suit, of damages in excess of the stipulated rent, which, as it appears, plaintiff has received. Indeed, in our former opinion, this *res adjudicata* contention was decided adversely to plaintiff.

Plaintiff's counsel further contend that at the close of all the evidence the court should have allowed plaintiff's motion for a directed verdict in his favor in the sum of $3,802.48. We think that the motion was properly denied. In our former opinion, in commenting upon the six grounds of defense, as set forth in defendant's affidavit of merits, we held that the second and fifth grounds stated good defenses to plaintiff's action. And an examination of defendant's evidence, as contained in the present transcript, discloses to us that such evidence sufficiently tended to prove those defenses as warranted the case being passed upon by a jury. And we think that the same may be said of defendant's fourth ground of defense.

It is further contended that the verdict and judgment are contrary to the manifest weight of the evi-

dence. Although the evidence on certain material points is conflicting we are unable to agree with counsels' contention.

Complaint is made that the court erred in refusing to give to the jury certain instructions offered by plaintiff and in giving certain other instructions offered by defendant. In view of all the facts and circumstances in evidence, and considering the authorities cited in our former opinion and other adjudicated cases, we are of the opinion that the jury were fully and fairly instructed and that there is no such error, as regards the instructions, as warrants a reversal of the judgment.

For the reasons indicated the judgment of the superior court is affirmed.

*Affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.