HERBERT F. STRIDE *et al.*, Plaintiffs and Counterdefendants and Defendants-Appellees and Cross-Appellants, v. 120 WEST MADISON BUILDING CORPORATION, Defendant and Counterplaintiff and Plaintiff-Appellant and Cross-Appellee.

First District (3rd Division)   No. 84—441

Opinion filed April 10, 1985.

Robert Handelsman, Anthony A. Lee, and Edward S. Salomon, all of Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago, for appellant.

Kevin M. Forde, Ltd., of Chicago (Kevin M. Forde and Katrina Veerhusen, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Herbert F. Stride and Herbert F. Stride, Ltd., brought this action against Joseph Stefan and 120 West Madison Building Associates (Associates), former owners and lessors of the building at 120 West Madison Street in Chicago. Stride sought an injunction to prevent Stefan and Associates from terminating his lease and for an accounting of excess rent paid. One month later, 120 West Madison Building Corporation (the Corporation), the current owners of the building and a codefendant in Stride's action, filed a forcible entry and detainer action against Stride. The Corporation also sought double rent and attorney fees under the lease. The trial court consolidated all the actions. After a trial, the court found that Stefan and Associates properly terminated the lease, entered judgment for possession, denied double rent during the pendency of the lawsuit and denied attorney fees for the Corporation. The Corporation appeals from the denial of double rent and attorney fees. Stride has filed a cross-appeal from the findings in favor of the Corporation.

Stride, an attorney, has been a tenant in the building for approximately 20 years. In 1982, he negotiated a five-year lease commencing

on August 1, 1982. Paragraph 18(e) of the lease provides:

> "The Lessor shall have the right to terminate this lease on the thirtieth day of April in any year if the Lessor \*\*\* decides to sell the building or the land under it \*\*\*. Such termination shall become effective and conclusive by notice of the Lessor to the Lessee not less than ninety days prior to the thirtieth day of April fixed in the notice. \*\*\* [T]he right hereby reserved to the Lessor shall inure to all purchasers, designees, lessees, transferees and ground lessees, as the case may be and is in addition to all other rights of the Lessor."

In December 1982, Stefan and Associates negotiated the sale of the building to the Corporation. An agreement was reached on December 23, 1982, which provided for the closing through an escrow. Pursuant to the contract, Associates prepared and executed an assignment of the building's leases and deposited it in the escrow on January 17, 1983. On January 24, Stride was served with a notice, signed by Stefan and delivered to one of Stride's employees, that his lease was terminated as of April 30, 1983. Stride received actual notice sometime in February 1983. The sale of the building was closed on February 1, 1983.

On April 18, 1983, Stride filed this action challenging the validity of the attempted termination of the lease. The Corporation filed its action for forcible entry and detainer, alleging that Stride was a "hold over" under the terms of the lease. It sought double rent from May 1, 1983, and attorney fees. The trial court found that the termination was valid and entered judgment for possession, but stayed execution until April 1, 1984. The court found that Stride had not acted in bad faith and consequently ordered double rent payment only in the event Stride held over after April 1, 1984. The Corporation's claim for attorney fees was denied.

We first address Stride's contention that the notice of termination of the lease was ineffective. Stride initially maintains that Stefan and Associates could not validly terminate the lease on January 24 because they assigned their interest eight days earlier and were no longer the "Lessor" under paragraph 18(e) of the lease.

Where a valid assignment is effective, the assignee acquires all of the interest of the assignor that is transferred and stands in the shoes of the assignor. (*Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 349 N.E.2d 599.) Generally, an assignment placed in escrow to be delivered upon the completion of some condition is not operative to convey an interest until the happening of the event. (*Hirschberg v. Russell* (1943), 317 Ill. App. 329, 45 N.E.2d 886.) However, the instrument

will be treated as relating back to and taking effect at the time of its original deposit in escrow where a resort to this fiction is necessary to prevent injustice or to effectuate the intent of the parties. (*Clodfelter v. Van Fossan* (1946), 394 Ill. 29, 67 N.E.2d 182.) Since the delivery of the assignment to the escrow did not operate to convey the seller's interests to the Corporation, we must determine whether the equities and the intentions of the parties require a finding that the assignment relates back to January 17.

Although Stride testified that he was unaware of paragraph 18(e), he maintains the intention of the parties in inserting such a clause in the lease was to give the lessor the privilege of conveying possession to the purchaser. Stride presented evidence that Stefan told him in December 1982 that a termination notice might not be sent if Stride renegotiated the lease. Stefan stated that only one other tenant received a termination notice. Stride urges that the notice was sent to cancel an unprofitable lease and to coerce him into paying higher rent, rather than to convey possession to the Corporation.

■ The language of the lease does not clearly indicate the intent of the parties in inserting a termination clause. In fact, Stride's testimony that he was unaware of the termination clause belies any intention on his part. As one authority has noted, termination clauses benefit owners in that they can sell more easily and the purchasers may continue the lease, take possession for its own use, or make a better rental. (2 M. Friedman, Friedman on Leases sec. 21.302, at 1037-38 (2d ed. 1983); see *Basiliko Inv. Corp. v. United Cigar-Whelan Stores Corp.* (D.C. Cir. 1948), 168 F.2d 567.) The record indicates that Stride's rent was substantially lower than the other tenants in the building due to a computational error. There is no inequity in the Corporation's wanting Stefan to terminate the lease so it could find a more profitable tenant or to compel a renegotiation by Stride. Stride, an attorney, gave Stefan the power to terminate when he signed the lease. The trial court properly found that the termination was valid under the terms of the lease.

We likewise reject Stride's argument that Stefan was acting as an agent of the Corporation, attempting to exercise a power which the Corporation did not have. While the Corporation has no power to terminate until some future date when it sells the building, there is nothing which prevents it from discussing the leases with the sellers and requesting that certain leases be cancelled. Stride cites no authority to support his position that the sellers had to act independently of the buyer's wishes and we find none.

■ We next turn to the Corporation's argument that Stride was

a "hold over" entitling the Corporation to double rent and attorney fees. Paragraph 7 of the lease provides in relevant part:

> "Holding Over: If the Lessee retains possession of the premises or any part thereof after the termination of the term by lapse of time or otherwise, the Lessee shall pay the Lessor rent at double the rate of rental specified in Section 1 for the time the Lessee thus remains in possession, *and in addition, shall pay the Lessor all damages sustained by reason of the Lessee's retention of possession.*" (Emphasis added.)

The trial court denied double rent from May 1, 1983, to April 1, 1984, based on its finding that Stride did not act in bad faith in failing to vacate the leased premises. The Corporation contends that the court erred in imposing a bad-faith requirement and that the court did not enforce the lease as written.

Illinois has long recognized the right to collect double rent where a tenant wilfully holds over after the expiration of his lease. (Ill. Rev. Stat. 1983, ch. 110, par. 9—202.) The statute is highly penal and recovery is granted only where the landlord strictly complies with its terms. (*Loeb v. Alexander* (1912), 174 Ill. App. 143.) Since double rent cannot be recovered under the statute when the landlord terminates the lease (see *Stuart v. Hamilton* (1872), 66 Ill. 253), the Corporation contends that paragraph 7 was inserted to provide a means to obtain double rent in the event of a hold over under any circumstances. Stride counters that the trial court erred in awarding double rent after April 1, 1984, because paragraph 7 is an unenforceable penalty clause.

The general rule of contracts that a plaintiff is only entitled to recover damages to the extent of his injury is applicable to cases of breach of a lease. (*Wanderer v. Plainfield Carton Corp.* (1976), 40 Ill. App. 3d 552, 351 N.E.2d 630.) Where damages are difficult to ascertain, the parties may specify a particular sum as liquidated damages. (5 Corbin on Contracts sec. 1054, at 319 (1964).) However, if the clause fixing damages is merely to secure performance of the agreement, it will be treated as a penalty and only actual damages proved can be recovered. (*Scofield v. Tompkins* (1880), 95 Ill. 190.) In doubtful cases, we are inclined to construe the stipulated sum as a penalty. *Beuttas v. Garvey* (1933), 270 Ill. App. 310.

Paragraph 7, by its express terms, allows the lessor to recover "all damages sustained by reason of the Lessee's retention of possession." This language evidences the parties' belief that such damages are ascertainable. Consequently, the provision for double rent payments is not an enforceable liquidated damages clause but a penalty

clause to assure prompt performance under the lease.

■■ ■ The case relied upon by the Corporation, *Fasking v. Goldberg* (1939), 299 Ill. App. 590, 20 N.E.2d 618, to support its claim for double rent, is distinguishable from the present case. In *Fasking*, double rent and attorney fees were awarded pursuant to the terms of the lease when the tenant did not give up possession after the lease term had expired. The fact that the lease expired in *Fasking* and the lease before us was terminated is irrelevant. The controlling fact in analogizing the statute and the *Fasking* case to the present lease is the finding of wilfulness. In order to enforce the double rent clause, the trial court imposed the bad-faith requirement. Consistent with its finding that Stride's hold over was not in bad faith, the trial court properly denied double rent from May 1, 1983, to April 1, 1984. The execution of the judgment for double rent after April 1, 1984, was stayed pending disposition of this appeal. Since there was a *bona fide* dispute before this court about rightful possession of the premises, the Corporation is not entitled to double rent during the pendency of this appeal.

The Corporation further maintains that the double rent was not a penalty since Stride's rent was substantially less than comparable office space and that the trial court's finding that Stride did not act in bad faith was against the manifest weight of the evidence. We have considered each of these arguments and find that they are without merit.

■■ We next consider the Corporation's contention that the trial court erred in denying attorney fees. Paragraph 15(g) of the lease requires the lessee to pay "the fees of counsel, agents and others retained by the Lessor, incurred in enforcing the Lessee's obligations hereunder or incurred by the Lessor in any litigation, negotiation or transaction in which the Lessee causes the Lessor, without the Lessor's fault, to become involved, or concerned." Again, the trial court found that Stride did not act in bad faith, and it denied attorney fees.

Where allowed by contract, attorney fees may be recovered by a successful litigant. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859; *Presbyterian Distribution Service v. Chicago National Bank* (1960), 28 Ill. App. 2d 147, 171 N.E.2d 86.) Stride does not contest this basic principle. His only argument is that because the termination was ineffective and the Corporation acted in bad faith to coerce higher rent payments, attorney fees should not be awarded. Neither of these arguments supports the trial court's decision. Furthermore, unlike the double-rent provision, an award for attorney fees is not penal in nature, and whether Stride acted in good faith was ir-

relevant. The parties clearly agreed to the payment of such fees and the trial court erred in denying them.

■ The Corporation also asks this court to impose fees and costs pursuant to section 2—611 of the Code of Civil Procedure. It maintains that Stride's action was "without reasonable cause and found to be untrue." (Ill. Rev. Stat. 1983, ch. 110, par. 2—611.) Assuming that this issue has not been waived, the imposition of section 2—611 fees is not warranted where the trial court found that Stride acted in good faith.

For the foregoing reasons, that portion of the judgment of the circuit court of Cook County awarding possession of the leased premises to the corporation and denying double rent until April 1, 1984, is affirmed. That portion of the judgment denying attorney fees to the Corporation is reversed, and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Affirmed in part; reversed in part and remanded.

WHITE, P.J., and RIZZI, J., concur.