MADIGAN BROTHERS, INC., Plaintiff-Appellant and Cross-Appellee, v. MELROSE SHOPPING CENTER COMPANY *et al.*, Defendants-Appellees and Cross-Appellants.

First District (6th Division) No. 1—89—1616

■

Opinion filed May 18, 1990.

■

Fischel & Kahn, and Gary L. Prior, of McDermott, Will & Emery, both of Chicago (David L. Weinstein and David B. Bayless, of counsel), for appellant.

John Lally, of Chicago, for appellee Melrose Shopping Center Company.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Madigan Brothers, Inc., sued for breach of contract when the roof collapsed from water damage at the premises leased from defendant, Winston Plaza Associates. Following a trial without a jury, the court awarded $2,610 in damages. Plaintiff appeals, contending that the lease's exculpatory provisions were without effect pursuant to section 1 of "An Act making void and unenforceable certain agreements ***" (Ill. Rev. Stat. 1981, ch. 80, par. 91), and that it is entitled to certain consequential damages. On cross-appeal, defendant contends that the trial court erred in awarding

any damages to plaintiff for destroyed merchandise because the lease provides that plaintiff bore that risk.

This appeal is part of numerous related actions which have spanned a decade. The present suit is limited to damages for a January 1982 collapse of a portion of a roof in plaintiff's store.

In 1960, plaintiff entered into a lease agreement for department store premises in a shopping center owned by defendant's predecessor in interest. Sometime prior to 1973, defendant took over as landlord under that lease. In 1973, the premises were expanded to include plaintiff's Junior Store.

In January 1982, after repeated problems with a leaking roof and unsuccessful attempts to repair the roof, the roof failed, causing plaintiff to shut its Junior Store temporarily. After 54 days, plaintiff reopened the store.

Trial began on March 2, 1989. In addition to plaintiff, its insurer, American Protective Insurance Company, was a plaintiff, but is not a party to this appeal. It had previously been permitted to intervene to recover the $158,000 it had paid plaintiff under a business interruption policy. In addition to defendant, Melrose Shopping Center Company was a defendant at trial, but is not a party to this appeal. Melrose filed a cross-claim against defendant for indemnity. Defendant filed a cross-claim against Melrose for contribution.

At trial, Joseph Madigan, plaintiff's president, testified for plaintiff. He related facts regarding the leakage, the damage, and the repair of that damage. He testified regarding the markdown of goods moved from the Junior Store to other locations. He also testified regarding replacement of the carpeting in the store.

George S. Iny, plaintiff's chief financial officer and vice-president, testified for plaintiff that $2,610 worth of goods were ruined. Other goods were shipped to a receiving center and then to its other stores. Some of the goods were marked down before being sold. Iny also testified regarding the replaced carpeting. Iny stated that the store's reopening costs included banners pulled by an airplane, a disc jockey at the store, balloons, and dancing girls for a total cost of $13,840. Iny said that in the first two months after opening, plaintiff made $160,000 more in profits than it had during the same two months the year prior to and after 1982. He explained that the extra profits were due to successful advertising for the reopening.

Iny also testified regarding plaintiff's claim of $135,000 for lost income. He explained this was the "gross margin that we would have experienced had we made our planned sales at that store."

Iny denied that any remodeling had been done prior to reopening, but stated that plaintiff spent four times the amount needed to repair the damage, although it only sought the amount needed for repairs.

Defendants offered no witnesses, and all four parties rested.

The court then commented that it would be necessary later to resolve several issues, including the applicability of the statute voiding exculpatory provisions in leases, and the scope of consequential damages under the lease, including the proper measure of damage for the damaged carpeting.

Following all closing arguments, the court made several preliminary rulings, disposing of all issues except those between plaintiff Madigan and defendant Winston. The court *sua sponte* dismissed American Protective Insurance as a plaintiff. As to Melrose, the court found in its favor and against plaintiff because Melrose was no longer the landlord in January 1982. For the same reason, the court dismissed the cross-claim of defendant against Melrose.

In its written decision, the court found section 1 (Ill. Rev. Stat. 1981, ch. 80, par. 91), voiding exculpatory provisions in leases, not applicable because the lease in effect in 1982 was an extension of the original 1960 lease. The court awarded no damages for lost profits because the lease did not contemplate recovery of lost profits, and because plaintiff failed to present reliable evidence of net lost profits or lost earnings from other stores. The court awarded no damages for salaries expended because such damages were not contemplated under the lease. The court awarded plaintiff $2,610 for destroyed merchandise because it was "the kind of damage that necessarily and directly results from the landlord's failure to perform his covenant to repair and maintain." The court found damages for the ruined carpet were recoverable under the lease, but found that plaintiff offered no reasonable basis for the award where it failed to present evidence of the carpet's original value or value just prior to being destroyed. The court found coverings and containers were recoverable items, but no evidence of value at the time of damage had been offered. No damages were awarded for accounting services or photographer's costs because they were not the kind of consequential damages within the contemplation of the parties to the lease. Preopening expenses were not awarded because they were not contemplated under the lease, and because no real loss was incurred where profits were substantially higher following reopening.

We first address plaintiff's contention that the lease's exculpa-

tory provisions do not apply because the legislature has declared such provisions void. The relevant statute became effective in 1971 and states that real property lease agreements "exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor *** in the operation or maintenance of *** the real property *** shall be deemed to be void as against public policy and wholly unenforceable." Ill. Rev. Stat. 1981, ch. 80, par. 91.

The statute specifically refers to exculpatory lease provisions which relieve the landlord of liability from its own "negligence." (Ill. Rev. Stat. 1981, ch. 80, par. 91.) The present suit is for breach of contract. Plaintiff admits that it does not allege, and has not proved, negligence on the part of defendant. Thus, the statute would not apply here. See *Zion Industries, Inc. v. Loy* (1977), 46 Ill. App. 3d 902, 361 N.E.2d 605 (statute not applicable because suit for damage caused by roof failure was based on lease and not on negligence and because lease predates statute).

 █ Plaintiff argues that the statute implies that it covers the landlord's attempt to avoid liability "based on wrongdoing" generally, either by the landlord's breach of contract or negligence. At common law, a lease exculpating a landlord from liability for damage to a tenant's property was valid and enforceable. (*J.B. Stein & Co. v. Sandberg* (1981), 95 Ill. App. 3d 19, 419 N.E.2d 652.) The statute, however, forbids the inclusion of such exculpatory clauses in leases, and therefore it is in derogation of the common law and should be strictly construed. (*McMinn v. Cavanaugh* (1988), 177 Ill. App. 3d 353, 532 N.E.2d 343.) The court will not presume that the legislature intended an innovation further than that which the statute specified or clearly implied. (*Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 387 N.E.2d 1118.) We hold that the statutory language limits its effect to negligence actions. (See *Zion Industries, Inc. v. Loy,* 46 Ill. App. 3d 902, 361 N.E.2d 605.) Thus, the trial court properly gave effect to the exculpatory provisions.

In view of our holding that we can give effect to the exculpatory provisions because this is not a negligence action, we do not have to consider the issue of whether the 1973 agreement is merely an extension of the 1960 lease or whether it is a new lease.

██ Having found that we can give effect to the exculpatory provisions, we go on to look at the language of those provisions.

Article IX, section 3, provides that the "Tenant agrees to use and occupy the demised premises *** at its own risk; and that Landlord shall have no responsibility or liability for any loss of or

damage to *fixtures* or other *personal property* of Tenant." (Emphasis added.)

Article X, section 2, provides that "It is understood and agreed that Tenant assumes all risk of damage to its own property arising from any cause whatsoever \*\*\*."

Thus, any damages for "fixtures or other personal property," fall within the exculpatory provisions and the tenant bears the risk.

Because the lease specifically repudiates the landlord's liability for damage to fixtures or personal property, the claim for damages to destroyed merchandise must be disallowed, and the trial court erred in awarding plaintiff $2,610 for such damages.

██ In regard to damages for things other than "fixtures or other personal property," we are not concerned with the exculpatory clauses. Thus, as to the consequential damages, *e.g.*, salaries expended, lost profits, lost earnings at other stores, and preopening expenses, we are governed by general rules for construction of leases. Under those rules, we agree with the trial court that the consequential damages sought by plaintiff either were not within the contemplation of the parties to the lease, or that plaintiff offered insufficient evidence to permit the court to award such damages.

The lease clearly states that the landlord has a duty to repair. Article VIII, section 1, of the lease requires the landlord to "make all repairs and replacements \*\*\* to all exterior portions of the leased premises," and to "make all structural repairs (whether exterior or interior) of the leased premises, \*\*\* including \*\*\* [the] roof." That section ends with a dangling phrase, with no apparent antecedent, reading: "in a safe, dry and tenantable condition and in good order and repair." The trial court found, and the parties apparently agreed, that this was an obvious drafting error. Where there is an ambiguity in a lease, the court may refer to parol evidence. (*McGinnis v. LaShelle* (1988), 166 Ill. App. 3d 131, 519 N.E.2d 699.) The parties, however, submitted no parol evidence. Thus, the court properly looked at the whole of section 1 and reasonably construed it to mean that defendant has the duty to repair and maintain the roof in a dry and tenantable condition. Defendant does not dispute this finding in this court. The question is, given a breach of this duty, what damages may plaintiff recover.

██ ▌ Generally, the principal function of the court in construing a written lease is to discern and give effect to the intention of the parties as expressed in the language of the document when read as a whole. (*Michigan Avenue National Bank v. Evans, Inc.*

(1988), 176 Ill. App. 3d 1047, 531 N.E.2d 872; *Midwest Bank & Trust Co. v. Scot Lad Foods, Inc.* (1986), 140 Ill. App. 3d 166, 488 N.E.2d 676; *Zion Industries, Inc. v. Loy*, 46 Ill. App. 3d 902, 361 N.E.2d 605.) Words should be given their common and ordinary meaning. (*Anest v. Bellino* (1987), 151 Ill. App. 3d 818, 503 N.E.2d 576.) Generally, damages to which a party is entitled are such as arise naturally from the breach itself, or those which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made. (*Zion Industries, Inc. v. Loy*, 46 Ill. App. 3d 902, 361 N.E.2d 605; *Sitnick v. Glazer* (1956), 11 Ill. App. 2d 462, 138 N.E.2d 84.) The general rule of contracts that plaintiff is only entitled to recover damages to the extent of its injury is applicable to cases of breach of a lease. *Stride v. 120 West Madison Building Corp.* (1985), 132 Ill. App. 3d 601, 477 N.E.2d 1318; *Wanderer v. Plainfield Carton Corp.* (1976), 40 Ill. App. 3d 552, 351 N.E.2d 630.

■ Article VIII, section 1, quoted above, contains no reference to the tenant's remedy. Other sections, however, refer to the risk which the tenant was to bear.

For example, under article VIII, section 5, the tenant has the "right to apply the costs thereof [repairs required to be made by the landlord but caused to be made by the tenant] as a credit on the amount of rent thereafter becoming due under the terms" of the lease.

In addition, under article XI, the tenant may abate or reduce its rent payments where "there is substantial interference with the operation of the business of Tenant in the demised premises, having regard to the extent to which Tenant may be required to discontinue its business in the demised premises, and such abatement or reduction shall continue for the period commencing with such destruction or damage and ending with the substantial completion by Landlord of such work of repair and/or reconstruction as Landlord is obligated to do."

The lease, therefore, limits plaintiff to paying for repairs and recouping through a rent credit or abating or reducing its rent. The lease does not indicate that the types of consequential damages which plaintiff seeks were reasonably within the contemplation of the parties at the time the lease was made.

In addition, plaintiff failed to provide sufficient evidence either regarding whether it suffered *any* loss, or regarding the extent or measure of its claimed loss. See *Stride v. 120 West Madison Building Corp.*, 132 Ill. App. 3d 601, 477 N.E.2d 1318; *Wanderer v.*

*Plainfield Carton Corp.*, 40 Ill. App. 3d 552, 351 N.E.2d 630.

In regard to damages for lost profits, plaintiff attempted to use a "gross margin" method of calculating lost earnings. The trial court correctly found that the accepted way of proving lost earnings is to calculate loss of net profit, with a reasonable degree of certainty or a fair degree of probability. See *Gaunt & Haynes, Inc. v. Moritz Corp.* (1985), 138 Ill. App. 3d 356, 485 N.E.2d 1123; *S.A. Maxwell Co. v. DeSoto, Inc.* (1979), 73 Ill. App. 3d 844, 392 N.E.2d 33; *Rivenbark v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 346 N.E.2d 494.

Plaintiff's evidence in regard to markdowns was also insufficient. Madigan testified that after moving the goods, plaintiff only marked them down "in some cases." He testified that an increased supply did *not* force plaintiff to mark down the goods. He said that "some of it was marked down because it was just timely for it to be marked down, and it was marked down in all the stores." Moreover, "merchandise ages" after 60 days and must be marked down.

Iny testified that the "good majority" of the merchandise was salable. In some cases, there was no markdown. Markdowns occur as a normal part of business. The goods would have been marked down anyway, but not for the same amount of money. Markdowns were made for a variety of factors, including the season and how long the merchandise had been in the store.

Iny also testified that oversupply required markdowns. On cross-examination he admitted that the records showed, for example, that one item from Winston Plaza was added to 30 similar items in the receiving center. All 31 were then dropped from $10 to $6, but plaintiff was only requesting the $4 markdown for the one item. While testifying on the one hand that the surplus items from Winston Plaza caused an oversupply requiring all similar goods to be marked down, on the other hand Iny testified, "I'm not saying that that one item caused everything to be marked down of the same kind."

From this evidence, it was impossible for the trial court to tell what markdowns, if any, resulted from the need to close the Junior Store and ship the goods to other stores.

Furthermore, in regard to damages for reopening expenses, plaintiff incurred no real loss. It admits that the first two months following the 1982 reopening resulted in approximately $160,000 additional revenues when compared to the same two months in 1981 and in 1983.

In regard to damages for the carpeting, plaintiff argues the

proper measure of damages is the replacement cost. We agree with the trial court, however, that the measure of damages of personal property which is totally destroyed is the reasonable value of the property immediately prior to its destruction. (*First National Bank v. Dusold* (1989), 180 Ill. App. 3d 714, 536 N.E.2d 100; *Gannon v. Freeman* (1982), 103 Ill. App. 3d 917, 431 N.E.2d 1303.) Plaintiff introduced no evidence of that value.

Madigan testified that he did not know if the carpeting was upgraded or downgraded. Iny testified that plaintiff would have replaced certain worn pieces in the entryway from time to time. Plaintiff had no records regarding that and no dates as to when any area of carpeting had been replaced. Iny testified that on the company books, the carpeting is depreciated, but as part of the store's total depreciation. Nevertheless, he could not give an approximate value for the carpeting prior to the water damage. "Well, to me the worth of anything we have in the store is its replacement value." Some parts of the carpeting were 15 years old, but "they look[ed] fine."

The actual amount of total damages incurred for repairs, including the question of whether the 54-day period of time was necessary to make the repairs, is further confused by testimony regarding remodeling. Iny denied any "remodeling," modernization or upgrading was done. He stated, "[U]pgrading implies a better quality of things." He testified further, "I would say that the store was rebuilt to the standards that we normally experience and build in our locations." He admitted, however, that plaintiff spent four times the amount of money necessary for repairing the water damage, although it only sought the one-quarter amount. Iny also stated: "As part of repairing the store and bringing it to a condition that we could reopen it, some remodeling would have been done, but when you say remodeling, you know, it wasn't extensive, the kind of remodeling that you might expect." Moreover, the successful reopening and the extra $160,000 in profits were partially due to "expenditure of monies for bringing the store up to a level that we wanted it to be at the time we reopened it."

In its closing argument, however, plaintiff argued that the jump in profits after reopening could be attributed to remodeling. "And indeed, while we might have presented evidence that the *remodeling* was caused by the breach, we have not done so. And we are not taking that position." Plaintiff's counsel noted that four times the cost of water repairs was spent on "remodeling."

We conclude that, except for the $2,610 award to plaintiff for

destroyed merchandise, the trial court properly decided on the issue of damages.

Defendant also maintains that there is an additional ground for affirming the trial court's judgment. Defendant asserts that it is a co-insured under plaintiff's insurance policy with American Protective Insurance. In view of our holding, it is unnecessary to consider that contention.

For the foregoing reasons, the portions of the judgment of the circuit court of Cook County in favor of defendant are affirmed; the portion of the judgment awarding $2,610 to plaintiff for destroyed merchandise is reversed.

Judgment affirmed in part and reversed in part.

EGAN and RAKOWSKI, JJ., concur.