ZENAIDA ABREU, suing derivatively on behalf of Ebro Foods, Inc., Plaintiff-Appellee, v. UNICA INDUSTRIAL SALES, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—90—0042, 1—90—0901, 1—90—1543 cons.

Opinion filed December 31, 1991.

Kevin M. Forde, Ltd., of Chicago (Kevin M. Forde and Mary Anne Mason, of counsel), for appellants.

Craig D. Tobin, of Craig D. Tobin & Associates, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Defendants appeal from an adverse decision in a shareholder's derivative action where the trial court found defendants had breached fiduciary obligations by usurping corporate opportunities and repeatedly attempting to acquire secret product formulas. The trial court awarded plaintiff monetary and injunctive relief, attorney fees, and appointed a provisional director to oversee the new board of directors and to break any deadlock between directors.

Defendants raise five issues on appeal: (1) whether the appointment of plaintiff's son-in-law, the general manager of operations of the company, as provisional director violates the statute authorizing such appointment; (2) even if such appointment was appropriate under the statute, whether the trial court erred in refusing to remove the provisional director for allegedly failing to carry out the trial court's instructions and follow statutory guidelines; (3) whether the trial court properly awarded attorney fees to plaintiff separate from the damages award; (4) whether the trial court's injunction protecting the company's product formulas is overly broad; and (5) whether damages were properly awarded.

Plaintiff Zenaida Abreu's husband, Manuel (Manny) Abreu was cofounder and 50% owner of Ebro Foods, Inc. (Ebro), a company that develops and manufactures food products. Manny ran the company as

its president until his death in November 1987. Plaintiff succeeded to her husband's stock interests and is currently president of Ebro. Defendants Ralph and William Steinbarth (Ralph and William) are co-owners and the only directors of defendant La Preferida, Inc., the other 50% shareholder in Ebro and a company that distributed Ebro's products.

In a thoughtful 42-page opinion, the trial judge carefully and explicitly set out his findings. The trial court found that Ralph created Ebro Industrial Sales, Inc., as a minority-owned business (later renamed Unica Industrial Sales, Inc.) to directly compete with Ebro Foods, Inc., in securing the business of Kraft Foods and awarded damages of $211,269 to Ebro for the lost Kraft business. The trial court also found that defendants repeatedly tried to obtain the master formulas for Ebro's products so that they might have the product made elsewhere and sell it themselves without going through Ebro. The court determined that ownership of the formulas is exclusive to Ebro and that all shareholders are enjoined from disclosing the formulas or data from which the formulas may be ascertained. The court also removed Ralph as director and five other people from employment at Ebro, finding that there had been oppressive and fraudulent self-dealing conduct that threatened the viability of Ebro as a solvent corporation.

Since Ebro was left with only two directors, plaintiff and La Preferida's candidate, Emil Smider, the trial court appointed a provisional director to stabilize the two hostile factions in the best interest of Ebro, pursuant to section 12.55(b) of the Illinois Business Corporation Act (IBCA) (Ill. Rev. Stat. 1989, ch. 32, par. 12.55(b)). Finally, the trial court awarded $173,030.80 in attorney fees and costs against all defendants in addition to damages.

Defendants first contend the trial court erred in appointing Silvio Vega (Vega), general manager of operations at Ebro and plaintiff's son-in-law, to serve as provisional director because the IBCA (Ill. Rev. Stat. 1989, ch. 32, par. 12.55) implicitly requires the provisional director to be an impartial third party. While the statute does not explicitly require the provisional director be impartial, defendants argue that because 11 of 16 States' statutes enacting the remedy of provisional directors expressly require impartiality, the rest of the statutes assume impartiality.[1] Defendant also relies on the fact that the trial

---

[1] Ga. Code Ann. §14—2—941 (1989); Ill. Rev. Stat. 1989, ch. 32, par. 12—55(b); Ohio Rev. Code Ann. §1701.911 (Baldwin 1986); S.C. Code Ann. §33—18—410 (Law. Co-Op. 1990); Wyo. Stat. §17—17—141 (1977).

court acknowledged that Vega could not be characterized as impartial in the "traditional" sense, and, in oral arguments, defendants observed that there is "no such thing as an impartial son-in-law."

■ We disagree that there is a strict requirement of impartiality in appointing a provisional director. Defendant's presumptive reading of legislative intent overlooks the fact that when the legislature enacted the IBCA in 1983, it was well aware of other States' statutes expressly requiring some degree of impartiality and chose to bypass that language and place reliance on the trial court's discretion. Section 12.55(b) states:

> "A provisional director may be appointed in the discretion of the court *if it appears that such action by the court will remedy the grounds alleged by the complaining shareholder* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 32. par. 12.55(b).

A provisional director is appointed as an alternative remedy to judicial dissolution in times of corporate strife to help guide the company through crisis toward the goal of stabilization and prosperity. When appointing a provisional director, the trial court considers only the best interests of the corporation, and not those of any warring factions. If the trial court, based upon the particular situation, finds that there is no traditionally independent third party with the skills and abilities necessary to fulfill the position within an urgent time frame, it may use its discretion to appoint a provisional director in the best interest of the corporation, whether or not that person has been aligned or appears to have been aligned with a particular group of shareholders.

To impose a strict requirement that the court find and appoint a traditionally impartial independent third party, and allow that person time to familiarize himself with the history and goals of the company and its current crisis situation, regardless of the urgency of the situation or the availability of highly competent people who may not be traditionally impartial, is to ignore the mission of section 12.55.

In this case, we find the appointment of Vega was made in the best interest of the corporation and that even though he could not be described as traditionally impartial, the trial court properly exercised discretion, given the circumstances of the case and Vega's background.

We reject the trial judge's reasoning that his right to appoint Vega is founded in the misdeeds of the defendants. The statute imposes upon the court a more goal-oriented approach.

Factors that a trial court may balance in evaluating candidates for provisional director include: degree and quality of past involvement in

the corporation; an understanding of the corporation's history and current situation; experience and abilities in providing a cooperative and unifying element; need for immediate appointment; degree of impartiality; and, above all, a true interest in the viability and advancement of the corporation as an entity and not allegiance to one of the deadlocked factions.

■■ ■ Defendants argue that Vega is merely a parrot or handmaiden of plaintiff, voting with plaintiff on matters simply because he is her son-in-law. We uphold the trial court's finding that this is an inaccurate and unfair description of Vega, given his experience, knowledge and involvement in the corporation.

Vega has worked for Ebro for over 17 years and is familiar with every aspect of the corporation; he holds a CPA degree that enables him to understand the financial complexities of the business; he has complete knowledge of the history of Ebro's relationship with La Preferida and the Steinbarths, and the symbiosis between the two companies.

While defendants recognize that the remedy is for the benefit of the corporation whose viability is threatened by the intershareholder dispute, they state that the intent of the statute is not to create an imbalance on the board in favor of the complaining shareholder. Defendants are correct in this interpretation, but overlook the fact that they have retained all of the shareholder rights that they had prior to the appointment of the provisional director.

Defendants cite *Gidwitz v. Lanzit Corrugated Box Co.* (1960), 20 Ill. 2d 208, 170 N.E.2d 131, to support its argument that Vega should be removed because defendants are effectively prohibited from participating in major corporate decisions because Vega creates a *de facto* majority in favor of plaintiff. In *Gidwitz*, dissident factions arose among shareholders of a corporation and the court dissolved the corporation because it found that the president, with the support of other family members owning one-half of the shares, ran the company oppressively. The court stated that the business was run by the president almost as a sole proprietorship with no regard for the views of the other one-half of the shareholders and directors.

We find this case differs from *Gidwitz* in that the trial court made no findings that any of Vega's actions were "oppressive," nor did it find that La Preferida was excluded from participating in the management of Ebro.

We agree with the trial court's findings in this case that a simple split in votes, however consistent, does not create a *de facto* majority, nor does it disenfranchise a shareholder. Corporation law does not

guarantee shareholders the outcome of a vote, merely a right to vote. Given the trial court's findings in the underlying derivative suit, it is to be expected that a provisional director, bound by duty to act in the best interests of the corporation, might be wary of votes cast by the offending shareholder in the suit. Simply because the provisional director does not agree with a voting shareholder does not automatically evidence improper impartiality.

We find Vega's appointment was properly within the discretion of the trial court and posed no infringement on defendants' shareholder rights.

Defendants next contend that even if the appointment of Vega is valid, he should be removed from office because he performed certain acts that are inconsistent with his statutory and court-imposed duties and responsibilities. Defendants argue that Vega failed his responsibilities as provisional director when he:

(1) submitted a proposal to Kraft for the sale of jalepeno peppers which entailed additional expenses for Ebro of approximately $300,000 without prior review by or approval of the board of directors;

(2) terminated La Preferida's 25-year role as the exclusive distributor of the "El Ebro" line of food products without presenting a cost-benefit analysis to or seeking the approval of the board of directors;

(3) hired a new auditor to prepare a certified audit for 1990 without the approval of the board of directors;

(4) voted against a proposal limiting management's ability to make financial and operational commitments on behalf of the corporation;

(5) voted in favor of reimbursing plaintiff for attorney fees and costs and to pay directly the attorney fees and costs on appeal even though there was no deadlock on the issue and even though defendant's director asked that the vote be postponed so he could further consider the issue;

(6) failed to attempt to reach any compromise prior to voting on disputed proposals;

(7) failed to ensure the preparation of complete and accurate minutes of board meetings; and

(8) failed to provide defendant's director an agenda for a meeting until the start of the meeting.

Because a provisional director is an officer of the court, it is the trial court's duty to oversee the provisional director's actions. Upon reviewing the evidence and the parties' arguments, the trial court

found that even though technical inaccuracies may have occurred regarding board procedure, none of the oversights, either separately or cumulatively, were enough to justify removal of Vega. The court found that the provisional director breached no duty to the corporation and remains committed to the best interests of Ebro.

We find the record upholds the trial court's determinations, and we affirm, with the exception of the charges involving the unilateral management decision to hire a new certified auditor and the mode of approval of attorney fees for Zenaida, which we reverse as inconsistent with the duties of a provisional director.

■ We partially reverse the trial court's order pursuant to Supreme Court Rule 366, which allows a reviewing court to enter any judgment and make any order that ought to have been given or made, and make further orders and grant any relief, including a partial reversal, that a case may require. 134 Ill. 2d R. 366.

It is generally accepted, unless corporate bylaws provide otherwise, that it is improper for management of a corporation to directly hire the auditors whose mission it is to evaluate management's performance. Auditors are often selected by a committee of independent nonmanagement directors or by a full board of directors. (Knepper, Liability of Corporate Officers & Directors §1.03, at 5-6 (4th ed. 1988); Brodsky & Adamski, Corporate Officers & Directors §8.05, at 8 (1984); Farrell, *The Audit Committee—A Lawyer's View*, 28 Bus. Law. 1089, 1091 (1973).) While there is no Illinois law directly addressing this issue, we find that in the instant case, any decision regarding the selection of a new auditor should have been reserved for the full board of directors and not made unilaterally by management, absent any contrary corporate bylaws. We find invalid Vega's unilateral appointment of an auditor and order the full board of directors to vote on selection of an auditor.

■ We also hold invalid the board of directors' vote to reimburse plaintiff and order that the proposal be put to a vote that incorporates proper procedure. In that decision, plaintiff and Vega voted in favor of reimbursing plaintiff for attorney fees while Smider abstained, stating he needed more time to study the proposal. The trial court determined that all relief for plaintiff's attorney fees be considered by the corporation directly and that the board must find a way to "filter" it down to plaintiff. From the record it appears that the process used to reach the outcome of the vote was deficient in that Vega and plaintiff improperly voted.

Provisional directors appointed under section 12.55 are officers of the court and serve at the discretion and direction of the court. The

trial court specifically instructed Vega to vote only upon deadlocked matters. We do not find Smider's abstention on the vote created a deadlock. Smider stated that he abstained from the vote because he had received the proposal only a short while before the meeting. Smider requested that the decision be postponed so he could vote on the matter cognizant of all relevant information. The trial court had instructed Vega, as provisional director, to ensure that the board of directors operated in a "very formal fashion—the board of directors meetings would be set meetings; people would know when they would be; agendas would be prepared, agendas would be kept; [and] that a record of the board of directors meeting would be kept *** that there be some record so that people can validate what was said."

We do not find it unreasonable under the circumstances for Smider to ask that the vote be postponed until he could thoroughly review the proposal for reimbursement; to vote without doing so would be an abdication of his duty as director to vote only when fully informed. Because there was no deadlock, we find Vega improperly voted on this issue.

We now examine plaintiff's vote to reimburse herself attorney fees. The Illinois Business Corporation Act addresses the issue of a director's potential conflict of interest. Ill. Rev. Stat. 1989, ch. 32, par. 8.60.

Section 8.60 of the statute states:

"Director conflict of interest. (a) If a transaction is fair to a corporation at the time it is authorized, approved, or ratified, the fact that a director of the corporation is directly or indirectly a party to the transaction is not grounds for invalidating the transaction.

(b) In a proceeding contesting the validity of a transaction described in subsection (a), the person asserting validity has the burden of proving fairness unless:

(1) the material facts of the transaction and the director's interest or relationship were disclosed or known to the board of directors or a committee of the board and the board or committee authorized, approved or ratified the transaction by the affirmative votes of a majority of disinterested directors, even though the disinterested directors be less than a quorum; ***.
***

The presence of the director, who is directly or indirectly a party to the transaction described in subsection (a), or a director who is otherwise not disinterested, may be counted in determining whether a quorum is present but may not be counted

when the board of directors or a committee of the board takes action on the transaction.

For purposes of this Section, a director is 'indirectly' a party to a transaction if the other party to the transaction is an entity in which the director has a material financial interest or of which the director is an officer, director or general partner."

Ill. Rev. Stat. 1989, ch. 32, par. 8.60.

Since defendants have challenged the validity of the transaction pursuant to subsection (b) by questioning the legality of the voting process, the statute states that plaintiff carries the burden of showing the transaction to be fair unless a majority of disinterested directors know of plaintiff's interest and vote in favor of the transaction.

We first find that plaintiff is an interested party directly or indirectly benefitted by the board's decision since plaintiff would gain reimbursement of monies from Ebro for her pursuit of the action against defendants. Also, the section clearly states that while an interested director's presence may be counted toward a quorum of the board, that director may not vote when the board takes action on the transaction. While the presence of all three directors at the meeting met a quorum, we find plaintiff improperly voted on the transaction to reimburse herself attorney fees. Ill. Rev. Stat. 1989, ch. 32, par. 8.60(b)(1).

We note that while this situation is not identical to a classic conflict of interest case involving a director, the need for a vote untainted by personal interest remains, regardless of the underlying reason for the vote. Plaintiff might have feared Smider would not vote to reimburse her, but that fear appears unfounded since defendants admit in their reply brief that they do not appeal that portion of the order authorizing Ebro to reimburse plaintiff for her expenses in litigating the case. Defendants specifically state that they decline to appeal the order authorizing reimbursement for fees out of the damages recovered.

It appears that defendants desire only to assure a vote by valid process and raise no other issue regarding plaintiff's full and fair reimbursement of attorney fees and costs in connection with the trial. Since the trial court ordered a stay upon the reimbursement of attorney fees on March 30, 1990, pending appeal, we remand so the decision to reimburse plaintiff is put to a proper vote by the board of directors in accordance with the views here expressed.

While the appointment of a provisional director is made pursuant to an authorizing statute, the trial court making the appointment retains discretion to limit and control a provisional director's powers

since he serves as an officer of the court in the best interests of the corporation. Therefore, we recognize that the trial court upon remand may be required to amend the role of the provisional director to require him to vote on this issue since plaintiff's presence may only be counted toward a quorum. If the current restrictions remain in place, only Smider will be allowed to vote, which will amount to only 50% of the disinterested director vote. Since the issue must receive a majority of votes from disinterested directors, the trial judge may wish to instruct Vega to cast a vote upon this issue.[2]

At this point, we reiterate the trial court's admonition that in a uniquely structured corporate situation such as this, it is highly prudent to retain outside counsel to avoid further complications in the decision-making process. Complex issues regarding legality of votes and the division of corporate responsibility between management and the board need to be examined carefully in order to adhere to corporate bylaws and corporation law.

Defendants next take issue with the trial court's award of attorney fees to Ebro separate from damages, to be paid by all defendants, except the nominal defendant Ebro. (Damages were set at $211,000, while plaintiff's attorney fees were approximately $170,000.) The court stated that the fees were not to be paid directly to plaintiff, who paid the expenses out of her own pocket, but to Ebro, the corporation benefitted by the suit. While the trial judge recognized that plaintiff paid the expenses, he stated that the board of directors would have to find some way to "filter it down to her," but noted that she is "clearly" entitled to be reimbursed.

The trial court stated that its separate award of attorney fees is based upon IBCA section 12.55(h), common law and general equitable authority vested in a chancery court.

Defendant argues that this action by the trial court is directly contrary to the "American Rule" under which the prevailing party is not entitled to recover attorney fees as costs or otherwise. (See *Alyeska Pipeline Service Co. v. Wilderness Society* (1975), 421 U.S. 240, 245, 44 L. Ed. 2d 141, 146, 95 S. Ct. 1612, 1615.) Illinois common law adopts the American Rule, and absent specific statutory authority or other agreement or stipulation specifically authorizing them, attorney

---

[2]We do not intend to place the corporation, the board or the trial court in a "catch 22" situation by disqualifying plaintiff. The court may make the ultimate decision as to these attorney fees in an action by plaintiff against Ebro which might be heard in this case since all of the parties are already of record. Plaintiff's cause of action would be satisfied only from funds received in the damage award.

fees and other ordinary expenses and burdens of litigation may not be awarded. *Ritter v. Ritter* (1943), 381 Ill. 549, 553, 46 N.E.2d 41; *Sanelli v. Glenview State Bank* (1984), 126 Ill. App. 3d 411, 415, 466 N.E.2d 1119.

■ One of the judicially created exceptions to the requirement that attorney fees be specifically authorized by statute or agreement has been recognized in the context of shareholder derivative suits. In those suits, attorney fees and costs may be recovered by the successful shareholder-litigant, but only out of the "common fund" awarded as damages in the litigation. *Hallmark Personnel, Inc. v. Pickens-Kane Moving & Storage Co.* (1980), 82 Ill. App. 3d 18, 401 N.E.2d 1049; *Bingham v. Ditzler* (1943), 320 Ill. App. 88, 89, 99, 49 N.E.2d 812; see *Maynard v. Parker* (1977), 54 Ill. App. 3d 141, 143, 369 N.E.2d 352; *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, 614, 319 N.E.2d 336.

■ Although the trial court relied in part upon *Bingham* for the proposition that attorney fees could be awarded separate from damages, we must disagree with that determination. The *Bingham* court stated that the issue was "whether or not in a minority stockholder suit a plaintiff is entitled *to be paid out of the recovery* her reasonable attorneys' fees where she has successfully compelled the restoration to the corporation of moneys unlawfully appropriated by its officers and directors." (Emphasis added.) *Bingham*, 320 Ill. App. at 89.

The *Bingham* court then remanded so the trial court could award fees, with directions to determine the amount of reasonable attorney fees and to "make allowance therefor of and from all moneys thereafter received by the defendant" (*Bingham*, 320 Ill. at 98-99), thus indicating an intention to provide recovery of attorney fees from the whole of the common litigation fund, and not separately.

We conclude, therefore, that absent specific statutory authority or agreement, the trial court is precluded from awarding attorney fees.

Plaintiff cites *Ross v. 311 North Central Avenue Building Corp.* (1970), 130 Ill. App. 2d 336, 264 N.E.2d 406, in which the court ruled that defendants could be ordered to pay attorney fees and costs separately, pursuant to *Lee v. Retirement Board of the Policeman's Annuity & Benefit Fund* (1964), 31 Ill. 2d 252, 256, 201 N.E.2d 361, and equitable principles. However, we believe that the *Ross* court's reliance upon *Lee* is apparently misplaced. *Lee* pertained not to attorney fees, but to a master's fee which was included in an award of costs under section 18 of "An Act to revise the law in relation to costs" (Ill. Rev. Stat. 1975, ch. 33, par. 18) (the predecessor of Ill. Rev. Stat. 1989, ch. 110, par. 5—118). Neither of these two statutes ever in-

cluded attorney fees as part of costs allowable absent a statutory provision or other agreement to that effect. See, *e.g., Hamer v. Kirk* (1976), 64 Ill. 2d 434, 437, 444, 356 N.E.2d 524; *Sanelli v. Glenview State Bank* (1984), 126 Ill. App. 3d 411, 466 N.E.2d 1119.

We further find the *Ross* case creates no precedent because no cases since *Ross* describe it as authority for an award of attorney fees against a losing party in a derivative suit. As defendant argues and we agree, it has been cited only as an example of the "common fund" exception to the general rule that attorney fees are not recoverable. *Hallmark Personnel, Inc. v. Pickens-Kane Moving & Storage Co.* (1980), 82 Ill. App. 3d 18, 24, 401 N.E.2d 1049; *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, 614, 319 N.E.2d 336.

The trial court stated that it relied, in part, upon the IBCA, presumably section 12.55(h), in assessing attorney fees against defendants. That section provides:

> "If the court determines that any party in an action commenced under Section 12.50 has acted arbitrarily, vexatiously, or not in good faith *in such action* or in connection with any alternative relief provided in this Section, the court may, in its discretion, award attorneys' fees and other reasonable expenses to the other parties to the action who have been affected adversely thereby." (Emphasis added). Ill. Rev. Stat. 1989, ch. 32, par. 12.55(h).

The language of section 12.55(h) reveals that the authority to award fees is limited to situations in which the court determines that a party in a case commenced under section 12.50 has acted arbitrarily, vexatiously or not in good faith "in such action." While the trial court stated that it found defendants were guilty of "self-serving misdeeds and breaches of fiduciary duty," within the context of the evidence presented during the case, it did not properly base its award of attorney fees upon defendants' actions within the course of the litigation process itself ("in such action"). Because the trial court did not find that defendants acted arbitrarily, vexatiously or in bad faith within the course of the litigation as section 12.55(h) requires, the award of attorney fees above and beyond the damages awarded must be reversed.

In addition, the trial court specifically stated that it did not rely upon section 2—611 of the Illinois Code of Civil Procedure or upon Supreme Court Rule 137, both of which relate to sanctions regarding pleadings, motions and other papers.

Plaintiff argues that defendants have acted arbitrarily, vexatiously and in bad faith "in connection with alternative relief" provided by

section 12.55 (*i.e.*, appointment of a provisional director). Plaintiff cites the trial court's litany of misconduct by the defendants as represented by the evidence in the case. While we agree that the evidence shows defendants' misconduct to be the underlying cause of the litigation, there has been no finding by the trial court that defendants have acted arbitrarily, vexatiously or in bad faith after the provisional director was appointed. Again, the language of 12.55(h) refers to conduct during the course of the litigation process itself, not to those acts giving rise to a cause of action. Given the trial court's explicit basis for its ruling, we find that attorney fees must be paid out of the common fund, in this case, damages.

Further, while the trial court stated that it partially relied upon its equitable powers in awarding attorney fees, we can find no substantial support for the idea that a court may award attorney fees according to its view of the egregiousness of the defendants' actions.

An examination of legislative amendments and debates regarding the 1983 Business Corporation Act establishes that the legislature did not intend to deviate from the American Rule that parties pay their own attorney fees. In fact, any intended deviation from that standard, or any possible confusion on that point, was generally made clear. For example, in legislative debate regarding section 11.70(h), procedure for dissenting shareholders, the pending bill was amended so that "in the area of fees and derivative actions, *** it restores the current law [American Rule] with regard to fees and derivative actions." (83d Ill. Gen. Assem., House Proceedings, October 19, 1983, at 185 (statements of Representative Cullerton).) Prior to the amendment, the bill had proposed allowance of judicial discretion in awarding attorney fees in a dissenting shareholder's appraisal proceeding. See Ill. Rev. Stat. 1989, ch. 32, par. 11.70(h).

This excerpt exemplifies the legislature's view that unless a specific section provides otherwise, the American Rule remains in place. Therefore we must find that section 12.55 does not provide a trial judge with discretion to award attorney fees absent a finding of vexatiousness during the course of the remedial proceeding, and not during the rise of the cause of action.

As for the issue of the injunction, defendants do not challenge a permanent prohibition against disclosure of Ebro's product formulas, but contend that the breadth of the injunction on its face prohibits lawful, judicially recognized means of reproducing products that are publicly available. The portion of the trial court's order regarding the injunction provides:

"(2) Shareholders in Ebro Foods, both corporate and individual, and anyone acting for and on behalf of shareholders are hereby prohibited and enjoined from disclosing the product formulas or from disseminating any data from which the formula may be ascertained to anyone not employed by Ebro Foods without a confidentiality agreement first having been executed between the recipient and Ebro Foods. Shareholders are further enjoined from using the name 'Ebro' on any product or service without the express written consent of the corporation Ebro Foods. Inc."

Defendants ask this court to vacate the injunction or to limit it so that they may independently develop products without the use of the formulas or with other confidential information. Defendants contend that the phrase "or from disseminating any data from which the formula may be ascertained" enjoins them from engaging in lawful and appropriate means of replicating the product formulas. Defendants argue that since the plain language of the injunction perpetually enjoins them from disseminating any "data" from which the formula may be derived, such data could be construed to include the ingredient label.

While we affirm the order imposing the injunction itself, we find that, on its face, it may be interpreted too broadly.

The Illinois Supreme Court has stated that the exact nature and duration of an injunctive remedy must be tailored to fit the facts of the case (*Brunswick Corp. v. Outboard Marine Corp.* (1980), 79 Ill. 2d 475, 479, 404 N.E.2d 205) and that an injunction should generally be only as broad as is necessary to protect the rights of the plaintiff. (*Village of Wilsonville v. S C A Services, Inc.* (1981), 86 Ill. 2d 1, 29, 426 N.E.2d 824.) While all parties involved in this dispute recognize that the product formulas are trade secrets entitled to protection, we point out that trade secrets are not protected against discovery by fair and honest means, such as by independent invention, accidental disclosure, or reverse engineering. *I L G Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 92, 273 N.E.2d 393.

The *Brunswick* court noted that the two fundamental policies underlying trade secret protection, encouragement of invention and maintenance of that oxymoron—commercial morality, are joined by a third element in shaping a remedy: a public interest in having free competition in the sale and manufacture of goods not protected by a valid patent. *Brunswick*, 79 Ill. 2d at 478.

When a trade secret is incorporated in a product available to the general public, any person may obtain the item and discover the trade secret through reverse engineering. In this situation, the trial court

will generally hold the length of the injunction to be, where ascertainable, the period of time necessary for the defendant to copy or develop the trade secret by lawful means. (*Brunswick*, 79 Ill. 2d at 478; *I L G Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 97-98; *Schulenburg v. Signatrol, Inc.* (1965), 33 Ill. 2d 379, 387-88, 212 N.E.2d 865.) The *Brunswick* court stated that if a trade secret were lawfully discoverable, a permanent injunction could provide a plaintiff windfall protection and would subvert the public interest in fostering competition.

In the present case, the products which defendants seek to replicate are available to the public and anyone may attempt to duplicate the products through reverse engineering using any information available to the public, including an ingredient label on the product itself. However, the trial court held, and we affirm, that the product formulas are the property of the Ebro corporation and shall not be released to defendants or anyone else seeking to copy the products, absent a valid written agreement prepared under the proper corporate procedures.

We find therefore, that the form of the injunction is overbroad, so we remand this issue to the trial court to delete the language "or from disseminating any data from which the formula may be ascertained" to make clear that defendants or any other person seeking to replicate the products may make use of any information available to the public. The present case is similar to *Tsuetaki v. Novicky* (1983), 158 Ill. App. 3d 505, 509 N.E.2d 1019, in which this court found that an injunction entered following the breach of an employment contract was overly broad where the trial court essentially enjoined all information relating to plaintiff's manufacture of contact lenses, and remanded to give the trial court an opportunity to specifically delineate what information was to remain confidential. *Tsuetaki*, 158 Ill. App. 3d at 514.

■ Finally, defendants argue that the method used to calculate damages is incorrect and the trial court's award is too high because it considered "gross profits" rather than "net profits." Defendants argue that the trial court failed to require plaintiff to assess the costs involved in selling the product. We affirm the damages award.

We first find that defendants have waived this issue since they failed to raise it in the trial court. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.) A court may allow exceptions to the waiver rule when there is an issue of public importance presented or when enforcement of the rule will achieve an unjust result. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279, 545 N.E.2d 731.) However, the waiver rule should not be ignored if

the opposing party could have introduced evidence to contest or refute the assertions made on appeal, had he the opportunity to do so in the trial court. (*Rodriguez*, 131 Ill. 2d at 279.) We find this last statement applies to the present case, since defendants' failure to raise the issue of the proper measure of lost profits deprived plaintiff of a chance to respond with her own information on that subject, and deprived the trial court of a chance to consider both arguments.

We find that since both parties used the same standard (gross profits) for measuring lost profits, and either was free to raise the issue of which standard was to be employed, both acquiesced to the use of the gross profits standard by failing to assert in the trial court that net profits were the proper standard.

Vega testified that the La Preferida profit on the misappropriated Kraft business was 35% above costs, while defendant Ralph Steinbarth testified that he thought the markup was only 27%. The trial court found, however, that defendants could provide no documentation as to the correct net profit margin. Further, the trial court expressed surprise when La Preferida's comptroller Gelabart testified that he did not know the profit margin either. The court stated that absent documentation or a credible explanation of net profits, it would accept the 35% figure, noting that there is no requirement of absolute certainty as to the amount of loss, but rather that there be a fair assessment of damages based upon the evidence.

We recognize that the general standard for determining lost profit is net profit, that is, gross profits minus costs. (*Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1990), 198 Ill. App. 3d 1083, 1090, 556 N.E.2d 730; *S.A. Maxwell Co. v. De Soto, Inc.* (1979), 73 Ill. App. 3d 844, 850, 392 N.E.2d 33.) In recovering lost profits, it is not necessary that the amount of loss be proven with absolute certainty. (*Midland Hotel Corp. v. The Reuben H. Donnelley Corp.* (1987), 118 Ill. 2d 306, 315-16, 515 N.E.2d 61.) Rather, a court may determine damages upon a reasonable degree of certainty or a fair degree of probability as to the amount of such damages, given the evidence available. (*Hagshenas v. Gaylord* (1990), 199 Ill. App. 3d 60, 77-78, 557 N.E.2d 316; *Madigan Brothers*, 198 Ill. App. 3d 1083, 556 N.E.2d 730.) Standards for reversing a determination of damages are stringent and a trial court's award will not be set aside unless it is contrary to the manifest weight of the evidence. *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 281 N.E.2d 323; *Hagshenas*, 199 Ill. App. 3d at 77; *Harris v. Faultfinders, Inc.* (1981), 103 Ill. App. 3d 785, 431 N.E.2d 1205.

For all of the foregoing reasons, we affirm in part and reverse and remand in part in accordance with this opinion.

Affirmed in part; affirmed as modified in part; vacated in part and remanded.

RIZZI and TULLY, JJ., concur.