*In re* MARRIAGE OF NADINE RODRIGUEZ, n/k/a Nadine Walter, Petitioner-Appellee, and ROLANDO RODRIGUEZ, Respondent (Petra Rodriguez, Respondent-Appellant).

Second District No. 2—87—1138

■■■■■■

Opinion filed October 6, 1988.—Rehearing denied November 4, 1988.

Vincent C. Argento, of Argento & Malcolm, of Elgin, for appellant.

John R. Wimmer, Aldo E. Botti, and Joseph P. Glimco III, all of Botti, Marinaccio, DeSalvo & Pieper, Ltd., of Oak Brook, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This case revolves around a child custody dispute in the circuit court of Kane County, between petitioner, Nadine Rodriguez (now Nadine G. Walter), and respondent, Rolando Rodriguez. As a result of bitter and continuing conflict between the parties concerning their minor child, Zachary, born April 26, 1985, the trial court eventually placed restrictions on the father's visitation rights. In order to secure his visitation rights, the father agreed to post a bond in the penal sum of $10,000. The bond named the "People of the State of Illinois" as obligee. The father executed the bond as principal, and the grandmother, Petra Rodriguez, executed the bond as surety, creating a $10,000 lien on her real estate in Elgin, Illinois. On October 15, 1985, a circuit judge accepted the bond as a condition of the child visitation rights accorded to the father.

This is an appeal from an order entered October 30, 1987, by another circuit judge, allowing the forfeiture of the bond and permitting the mother to execute on the real estate provided as collateral by the surety. The central issue before this court is whether the trial court erred in ordering forfeiture of the bond and execution on the property provided as collateral therein. We reverse.

On May 6, 1985, on the same date that the mother filed her petition for dissolution of marriage, the trial court entered an *ex parte* domestic violence order of protection granting temporary custody of the minor child to the mother and requiring the father to surrender the minor to the mother. On May 13, 1985, the father appeared in court, at which time a preliminary injunction ordered the parties to refrain from harassing each other, enjoined both parties from removing the child from this State, ordered their strict compliance with the order granting temporary custody of the child to the mother, and provided temporary visitation rights to the father.

On June 27, 1985, the court entered a rule to show cause finding the father in contempt of court for failing to comply with a custody order dated June 25, 1985. The order provided that the father could purge himself of contempt by returning the minor child.

On June 28, 1985, the father appeared in court, purged himself of the civil contempt, and moved to quash the mittimus directed to him. The court stayed the mittimus and entered a second domestic violence

order of protection. This order awarded temporary custody of the minor child to the mother and provided that the father was to have absolutely no contact and no visitation with the minor child.

On September 13, 1985, the court entered an order providing for restricted visitation of the minor child by the father upon certain terms and conditions. The order provided:

"Visitation [is] to be conditioned on Rolando Rodriguez posting a bond in a penal amount of not less than $10,000 to be acceptable by plaintiff's attorney or approved by the court."

On October 23, 1985, the husband presented a petition to approve bond. The bond provided that the father as principal, and Petra Rodriguez, the husband's mother, as surety, "respectively and jointly and severally acknowledge themselves to owe and to be indebted to the PEOPLE OF THE STATE OF ILLINOIS in the penal sum of $10,000, to be levied upon their property, of whatever kind and wherever situated." In consideration of the restricted child visitation rights he was to receive, the respondent undertook six conditions of his surety bond:

"1. That said Defendant shall appear in the Circuit Court of the 16th Judicial Circuit, kane [sic] County, Illinois, Family court Division, Courtroom 213, on the 23rd day of October, 1985 at 9:00 a.m., and appear thereafter as ordered by said Court until discharged or until final Judgment for Dissolution of Marriage is entered by the Court;

2. That said Defendant shall submit himself to any and all said Orders and process of said Court;

3. That said Defendant shall not depart the area of the law offices of McNAMEE & MAHONEY, LTD. [counsel for the husband], at 519 North Route 31, Dundee, Illinois, during the times of his restricted visitation;

4. That said Defendant shall not violate penal statutes of any jurisdiction;

5. That said Defendant shall have two hours per week restricted visitation to take place at the law office of McNAMEE & MAHONEY, LTD., each and every week;

6. That the Defendant shall deposit his automobile keys with the law offices of McNAMEE & MAHONEY, LTD. during the time of his visitation with the minor child."

The bond concluded as follows:

"If said Defendant shall comply with the conditions of this surety bond, it shall upon order of tis [sic] Court, be discharged and the undersigned released from the obligations thereof and the lien on the real estate discharged. If said Defendant shall fail to

comply with the conditions of said bond, ti [*sic*] shall remain in full force and effect and the obligated sum fixed herein shall be collected and disbursed in accordance with further Orders of this Court."

No expiration date was provided for in the bond. Attached to and made part of the bond was the "Sworn Schedule" of the husband's mother. In the sworn schedule, the husband's mother pledged certain real estate commonly known as 418 Mill Street in Elgin, Illinois, as security for the husband's compliance with the bond.

On January 7, 1986, the court entered an order dissolving the parties' marriage, and other remaining issues were reserved.

On April 29, 1986, the court entered an order joining the husband's mother, Petra Rodriguez, as a party to the proceeding.

On May 15, 1986, the court modified the visitation schedule at the B-2 hearing on the parties' dissolution of marriage proceeding. The visitation schedule was again modified on August 7, 1986; the father was then allowed to visit his son every Sunday from 8 a.m. to 5 p.m. On August 20, 1986, the judgment for dissolution of marriage was entered, resolving all issues which had been reserved. The judgment provided that the mother was to have custody of the minor child and the father was allowed visitation with the minor child. The judgment stated: "Visitation shall be specific and restricted in light of prior circumstances where the defendant [father] exercised unauthorized physical control over the minor child."

The judgment also provided as follows:

"All visitation is expressly conditioned upon PETRA RODRI-GUEZ [the husband's mother] actively supervising the visitation and PETRA RODRIGUEZ maintaining as a bond to insure defendant's [husband's] compliance with visitation the equity which she has in real estate described as follows:

\* \* \*

and defendant and intervenor [husband's mother] shall execute a bond in the form attached hereto and incorporated herein."

No bond was attached to the judgment of dissolution of marriage, and there is no bond in the record other than the one approved on October 23, 1985.

On December 17, 1986, the circuit court heard testimony and evidence concerning various petitions filed by both the mother and the father. The court entered an order that date allowing the father to have visitation with his son on Christmas Eve from 10 a.m. to 9 p.m. as well as on January 9 and 16, 1987, from 10 a.m. to 5 p.m. on both days. On December 26, 1986, the court issued a rule to show cause

against the mother for her alleged failure to comply with the December 17, 1986, visitation order. As a result, a mittimus was issued against the mother. The court also entered an order changing the temporary custody of the minor child to the father. The rule to show cause against the mother was discharged on June 1, 1987, when no one appeared in court.

On June 30, 1987, the mother filed a motion to vacate the transfer of custody order. The trial court did eventually restore custody to the mother.

On July 10, 1987, the mother filed a motion for an order requiring the father to produce the minor child. The court's order granted the mother's motion to produce and ordered the father to produce the minor child in court on July 24, 1987, and also required the father to appear on that date. On July 24, 1987, the father failed to appear in court and produce the minor child. The court ordered that the custody of the minor child be restored to the mother.

On August 26, 1987, the mother filed a motion to execute on the bond, stating that execution on the bond might assist in effecting the return of the child. A brief hearing on this motion took place on October 20, 1987. The grandmother, Petra Rodriguez, was represented by attorney Vincent Argento, who was given leave to file his appearance *instanter* in the matter. The court denied attorney Argento's request for a continuance to prepare for the hearing, but he was given a brief time to review the file just prior to the hearing that day. The court found that the bond previously posted was still in force and effect and that the father had violated an order of the court. The court then ordered the bond forfeited and permitted the mother to proceed to execution.

The father first argues that the mother is not the proper party to sue on the bond and has no standing to proceed to execution. The mother asserts that this issue is waived because it was not argued in the trial court below. However, the rule of waiver is a limitation on the parties and not on the courts, and a reviewing court may ignore the waiver rule in order to achieve a just result. (*Augsburg v. Frank's Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 333.) In view of the harsh penalty imposed on the surety, Petra Rodriguez, and the extremely limited time that was available to substitute counsel to prepare for the hearing on the bond, we believe that justice requires us to consider the issue of the mother's standing to maintain the action on the bond.

The contract of an individual surety or a voluntary surety will be strictly construed, and all doubts and technicalities resolved in favor of the surety, such person being regarded as a favorite of the

law. (34 Ill. L. & Prac. *Sureties* §10 (1958) (and cases cited therein).) Where a bond, upon its face, denotes the parties to it, the action must be between the parties to it, no matter what may be the terms of the defeasance. The extent of liability of a surety must be embraced in the obligation or contract and must be construed strictly; the liability, if any, must arise from the contract and cannot be extended by implication. (*Phillips v. Singer Manufacturing Co.* (1878), 88 Ill. 305, 307.) Only the obligee in the bond or his legal representative can claim the penalty of a bond. *Lovejoy v. Stelle* (1886), 18 Ill. App. 281, 283; *Sandusky v. Neal* (1878), 2 Ill. App. 624, 628.

 If a bond by its terms and conditions does not express the true intention of the parties, a court of law has no power or authority to correct a mistake and reform the contract so as to make it conform to the intention of the parties. Neither can a court of law presume that the contracting parties intended to insert in the bond a provision different from that which the plain language would indicate and then give a construction to the bond which would be legitimate if it contained the supposed omitted provision. *Corn Belt Bank v. Maryland Casualty Co.* (1935), 281 Ill. App. 387, 393.

 In the present case, there is no ambiguity in the language of the bond. Petra Rodriguez obligated herself to pay a penal sum to the People of the State of Illinois, the obligee named in the bond. The mother, Nadine Rodriguez Walter, is neither named in the bond, nor is there any language whatsoever which indicates that the bond was made for her benefit. The obligee, the People of the State of Illinois, is the proper party to maintain the action on the bond, if in fact the bond was in full force and effect at the time the trial court entered the order of forfeiture and execution. Since the mother was not the proper party to maintain the suit, the trial court had no authority to permit the forfeiture of the bond and the mother's execution thereon. By allowing the action of the mother, in effect, the court impermissibly supplied a missing provision in the bond, extending the obligation of the surety to an unnamed third party by implication. This is contrary to well-established law on the subject. We therefore reverse.

In view of our disposition of this case, we do not address the father's second argument that this bond was not in full force and effect at the time the order of forfeiture was entered.

The judgment of the circuit court of Kane County is reversed.

Reversed.

LINDBERG, P.J., and INGLIS, J., concur.