(No. 68002.—

*In re* MARRIAGE OF NADINE RODRIGUEZ, Appellant, and ROLANDO RODRIGUEZ (Petra Rodriguez, Appellee).

*Opinion filed September 27, 1989.*

274

Botti, Marinaccio, DeSalvo & Tameling, Ltd., of Oak

Brook (Aldo E. Botti and John R. Wimmer, of counsel), for appellant.

Vincent C. Argento, of Elgin, for appellee.

JUSTICE RYAN delivered the opinion of the court:

This appeal stems from a bitter child custody dispute between Rolando Rodriguez (father) and Nadine Rodriguez, now Nadine Walter (mother). The primary question it presents is whether the mother has standing to execute on a penal bond that the father posted to secure his visitation rights. The parties to the bond are the father as principal, Petra Rodriguez, the father's mother (grandmother) as surety, and "The People of the State of Illinois" as obligee. The trial court entered an order permitting the mother to execute on the bond. The appellate court reversed this order. (175 Ill. App. 3d 241.) We granted the mother's petition for leave to appeal under our Rule 315 (107 Ill. 2d R. 315). We reverse the appellate court, finding that the trial court's order was not erroneous.

The complex factual and procedural background of this litigation may be summarized as follows: On May 6, 1985, the mother filed a petition for dissolution of marriage. At that time, the trial court entered an *ex parte* domestic violence order of protection granting her temporary custody of the couple's minor child. This order also directed the father to surrender the child to the mother.

On June 27, 1985, the trial court found the father in contempt for failing to return the child to the mother. The next day, the father appeared in court and purged himself of the contempt. On that date, the trial court entered a second domestic violence order of protection, which provided that the father have no visitation and no contact whatsoever with the child.

On September 13, 1985, the trial court entered an order allowing the father limited visitation of the child, if the father would post a $10,000 penal bond. Shortly thereafter, the father presented a bond that listed him as principal, the grandmother as surety, and "The People of the State of Illinois" as obligee. The grandmother pledged certain real estate as security for the bond. The bond was to guarantee the father's compliance with six conditions placed on his visitation rights. The bond stated:

"1. That said Defendant [the husband] shall appear in the Circuit Court of the 16th Judicial Circuit, kane [sic] County, Illinois, Family Court Division, Courtroom 213, on the 23rd day of October, 1985 at 9:00 a.m., and appear thereafter as ordered by said Court until discharged or until final Judgment for Dissolution of Marriage is entered by the Court;

2. That said Defendant shall submit himself to any and all said Orders and process of said Court;

3. That said Defendant shall not depart the area of the law offices of McNAMEE & MAHONEY, LTD. [counsel for the husband], at 519 North Route 31, Dundee, Illinois, during the times of his restricted visitation;

4. That said Defendant shall not violate penal statutes of any jurisdiction;

5. That said Defendant shall have two hours per week restricted visitation to take place at the law office of McNAMEE & MAHONEY, LTD., each and every week.

6. That the Defendant shall deposit his automobile keys with the law offices of McNAMEE & MAHONEY, LTD. during the time of his visitation with the minor child."

The bond concluded as follows:

"If said Defendant shall comply with the conditions of this surety bond, it shall upon order of tis [sic] Court, be discharged and the undersigned released from the obligations thereof and the lien on the real estate discharged.

> If said Defendant shall fail to comply with the conditions of said bond, ti [sic] shall remain in full force and effect and the obligated sum fixed herein shall be collected and disbursed in accordance with further Orders of this Court."

The trial court approved the bond as drafted.

A judgment of dissolution of marriage was entered on August 20, 1986, which resolved all of the issues, including those that had been previously reserved. The judgment awarded custody of the child to the mother, but allowed the father restricted visitation, conditioned upon, among other things, the maintenance of the bond.

On August 26, 1987, the mother filed a motion to execute on the bond. In a hearing on this matter, the mother testified that she had not seen her child since June. The mother felt that execution of the bond might assist in securing the return of the child from the father. The trial court found that the father had violated the conditions of the bond and entered an order permitting the mother to execute on the bond.

The grandmother appealed this order, and the appellate court reversed. (175 Ill. App. 3d 241.) The appellate court held that the mother did not have standing to execute on the bond because she was not named in the document. The court noted that the parties did not raise the question of standing at the trial level, but it decided to consider this issue, declining to hold that this issue was waived by the parties' failure to address it in the lower court.

The court further held that the mother could not request reformation of the bond to extend the obligation of the surety to the mother. The court based this ruling on *Corn Belt Bank v. Maryland Casualty Co.* (1935), 281 Ill. App. 387. *Corn Belt Bank* states that a court of law has no power to reform a bond. *Corn Belt Bank*, 281 Ill. App. at 393.

We note initially that the record in this case reveals that no one at the trial level raised the issue of whether the mother had standing to execute on the bond. The general rule is that questions not raised in the trial court are deemed waived and cannot be argued for the first time on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500; *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.) An exception to this waiver rule is found when an issue of public importance, decided by the appellate court but not by the trial court, is presented. Under these circumstances, this court may consider the issue. (*People ex rel. Baylor v. Bell Mutual Casualty Co.* (1973), 54 Ill. 2d 433, 439.) The appellate court in the case before us applied another exception to the waiver rule: when ignoring it will achieve a just result. (175 Ill. App. 3d at 246, citing *Augsburg v. Frank's Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 333; see also *Hux v. Raben* (1967), 38 Ill. 2d 223, 225.) The waiver rule should not be ignored, however, if the opposing party could have introduced evidence to contest or refute the assertions made on appeal, had he an opportunity to do so in the trial court. *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313.

Normally, we would find the waiver rule dispositive of a case such as the one before us. Nevertheless, by virtue of the appellate court's opinion, we find it necessary to address the standing issue presented here, as well as the question of the authority of the trial court to reform a bond. The waiver rule is a limitation on the parties to an appeal, and not on the reviewing court. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 224.) Consequently, we will begin by first examining the standing of the mother to execute on the bond.

The purpose of the doctrine of standing is to ensure that courts are deciding actual, specific controversies,

and not abstract questions or moot issues. (*Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 747-48.) The primary focus of standing is that a party have a real interest in the action brought and in its outcome. (*Weihl v. Dixon* (1977), 56 Ill. App. 3d 251, 253.) Although standing is designed to preclude persons having no interest in a controversy from bringing suit, it should not preclude a valid suit from being litigated. *Commonwealth Edison Co. v. Community Unit School District No. 200* (1976), 44 Ill. App. 3d 665, 670.

This court has defined standing as requiring " 'some injury in fact to a legally recognized interest.' " (*In re Estate of Burgeson* (1988), 125 Ill. 2d 477, 486, quoting *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 254.) In deciding whether a party has standing, a court must look at the party to see if he or she will be benefitted by the relief granted. (See 59 Am. Jur. 2d *Parties* §30 (1987).) Standing is a component of justiciability, and therefore must be defined on a case-by-case basis. *Burgeson*, 125 Ill. 2d at 485.

In this case, the mother was injured. She had her child taken from her, in violation of the custody order entered by the trial court. Moreover, she has an interest in maintaining custody of her child according to that court order. A party's desire to have a trial court custody order enforced can be construed as a legally recognized interest. Therefore, we find that the mother does have an "injury in fact to a legally recognized interest." Furthermore, the mother felt that execution on the bond would aid in securing the return of the child. Apparently, the trial court agreed, as it entered an order allowing her to execute on the bond. Consequently, we believe that she would be benefitted by the relief she sought. As a result, we conclude that the mother had the requisite interest to be afforded standing to execute on the bond.

We find further support for our conclusion in an analogous area of law. Criminal contempt proceedings do not have to be brought in the name of the People. A private party has standing to prosecute these actions. (*People v. Goss* (1957), 10 Ill. 2d 533, 547; *People ex rel. Rusch v. Jilovsky* (1929), 334 Ill. 536, 538; *People v. Martin-Trigona* (1980), 94 Ill. App. 3d 519, 523; but see *Young v. United States* (1987), 481 U.S. 787, 809, 95 L. Ed. 2d 740, 759, 107 S. Ct. 2124, 2138 (under its supervisory authority over the lower Federal courts, the United States Supreme Court held that counsel for a party who benefits from a court order may not prosecute a contempt action stemming from a violation of that order).) We believe that contempt actions are analogous to this proceeding on the bond.

Civil contempt actions and the action on the bond in question here are both aimed at ensuring compliance with orders of the court. In civil contempt actions, it is often said that the contemnor holds the keys to his cell in his pocket (see, *e.g.*, *Continental Illinois National Bank v. Brach* (1979), 71 Ill. App. 3d 789, 792-93), because he can purge himself of the contempt by submitting to the court's order. Similarly, the bond posted in this case would remain inviolate if the father had respected the order the trial court entered and honored the custody provision.

Because the father chose not to obey the trial court's order, the court found it necessary to allow the mother to execute on the bond. We hold that the mother has standing to do so. We must next examine the related issue of whether the mother has standing to ask the trial court to reform the bond.

The mother contends that the bond needs reformation to name her, and not the People of the State of Illinois, as obligee. Generally, one who is not a party to a bond cannot seek to have it reformed. "Reformation of writ-

ten instruments may be had by the immediate parties thereto and by those standing in privity with them, but a person not a party or privy to the transaction in question with a substantial interest therein may not maintain the action." (76 C.J.S. *Reformation of Instruments* §47 (1952).) According to this rule, the mother would not have standing to request reformation of the bond.

The grandmother contends that the above rule was the dispositive factor in *Sandusky v. Neal* (1878), 2 Ill. App. 624, and that *Sandusky* stands for the proposition that the mother should not have standing in any facet of this case. In *Sandusky*, the court held that one who was not named in a penal bond could not maintain an action on the bond. (*Sandusky*, 2 Ill. App. at 628.) We believe that *Sandusky* does not frame the issue precisely as it appears in the case at bar. In *Sandusky*, the court did not distinguish between standing to execute on the bond and standing to reform it. To the extent that *Sandusky* holds that a party not named in a bond cannot execute on the bond, it is overruled.

In this case, reformation of the bond is not necessary to accomplish the purpose for which the bond was posted, and we need not decide whether the mother had standing to seek reformation. The bond states that after execution and payment of the money into the court, the sum "shall be *** disbursed in accordance with further Orders of this Court." Therefore, once the court is in possession of the bond money, the trial judge, under the terms of the bond, is free to disburse the money in a manner which he feels will accomplish the purpose of the bond. We believe that the trial judge is the proper party to control the distribution of these funds.

Finally, although this issue does not affect the decision in this case, we must address whether the trial court had the authority to reform the bond. The appellate court's opinion states: "If a bond by its terms and

conditions does not express the true intention of the parties, a court of law has no power or authority to correct a mistake and reform the contract so as to make it conform to the intention of the parties." (175 Ill. App. 3d at 247.) The appellate court based this statement on *Corn Belt Bank v. Maryland Casualty Co.* (1935), 281 Ill. App. 387, 393.

We find that the appellate court erred in relying on *Corn Belt Bank* because of the merger of law and equity in Illinois. The new judicial article of our 1870 Constitution, effective as of 1964 (Ill. Const. 1870, art. VI), made law and chancery courts divisions of a unified court system, giving a court jurisdiction to hear issues both sounding in equity and in law. (*Peter G. Georges, Inc. v. Feldon Building Corp.* (1978), 61 Ill. App. 3d 631, 634.) This article, now embodied in our 1970 Constitution (Ill. Const. 1970, art. VI), empowers the circuit courts with jurisdiction over all justiciable matters. (*Biggs v. Health & Hospitals Governing Comm'n* (1977), 55 Ill. App. 3d 501, 503; *Stevens v. Protectoseal Co.* (1975), 27 Ill. App. 3d 724, 729.) Consequently, in appropriate cases, a circuit court may reform a bond when acting in accordance with the equitable powers it possesses. These equitable powers may be invoked for the correction of mistakes in bonds, and where clear evidence is shown that the instrument does not conform to the intention of the parties, it may be reformed. *Henkleman v. Peterson* (1895), 154 Ill. 419, 424.

For the reasons stated above, the judgment of the appellate court is reversed, and this cause is remanded to the circuit court of Kane County for further proceedings in accordance with this opinion.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*