*In re* MARRIAGE OF MARTIN BAPTIST, JR., Petitioner-Appellant, and MARY L. BAPTIST, Respondent-Appellee.

Fourth District   No. 4—91—0817

Opinion filed July 30, 1992.

Gordon W. Gates, of Londrigan, Potter & Randle, P.C., of Springfield, for appellant.

Thomas R. Appleton and Elizabeth W. Anderson, both of Morse, Giganti & Appleton, of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner Martin Baptist, Jr., appeals from the child support modification order entered by the Sangamon County circuit court which increased his support obligations. He argues the court abused its discretion by increasing his monthly obligation from $250 to $650 monthly and asks this court to set his obligation at $350 monthly. He contends the court made the following errors: (1) it erred by refusing to deduct from his net income figure—used to determine his monthly child support obligation—the periodic payments he was making to his former wife, respondent, Mary L. Baptist; (2) it abused its discretion by not deviating downward from the statu-

tory child support guidelines; (3) it erred because it did not make express findings for its upward deviation from the support guidelines; and (4) it abused its discretion by setting support above the statutory minimum support guidelines. We reject Martin's allegations and affirm the trial court's order.

## I. FACTS

Martin and Mary were married in November 1954. Six children were born during their marriage, which was dissolved in July 1983. The parties negotiated a settlement agreement which was incorporated into the dissolution order. The agreement, in relevant part, provided Martin would make periodic payments to Mary of $500 monthly until she remarried, died or reached age 65.

In return for Mary transferring her partnership interest in the parties' business interests, she was also given an equitable lien on 50% of Martin's share of the income disbursed by the business entities. This payment was credited 50 cents on the dollar against the $500 monthly periodic payments. Because these payments were consistently $1,000 monthly, Martin was not paying the $500 monthly periodic payments.

Mary relinquished her interests in the following businesses: Custom Construction Company, a partnership; Custom Real Estate Company, a partnership; Custom Insurance Agency, Inc.; Custom Management, a partnership; and Martin Baptist Jr. & Son, a partnership. The parties' agreement also provided that if the agreement was terminated Mary would receive a one-half interest in the properties or one-half of the proceeds from the sale of the properties. Upon Martin's death, one-half of the interest in the properties or one-half of the proceeds from the sale of the properties would be conveyed to Mary. Martin was ordered to pay $250 monthly per child as support. Child support is currently being paid for only one child because the other children have reached the age of majority.

In March 1989, Mary sought modification of the child support provision. On January 1, 1991, Martin voluntarily increased his payments to $350 monthly. The court heard evidence on the modification petition on January 3, 1991, and March 4, 1991. Martin's current spouse, Linzy Baptist, sought and was granted permission to intervene. She sought protection of her rights to certain funds because she held partnership interests in businesses in which Martin was also a partner, she and Martin had filed joint tax returns, and their funds were commingled.

Martin's *pro forma* tax return indicated he had paid Mary $1,239.58 monthly during 1990. This figure represented the $1,000 equitable lien from $2,000 which Martin received as distributions from the businesses, and $239.58 for country club dues and life insurance premiums which he was ordered to pay by the original dissolution decree.

Evidence at the hearings suggested Martin's income was reduced because he transferred part of his business interests in the various partnerships to his current spouse, Linzy Baptist. After Martin's counsel objected to questions in this area, the judge indicated she viewed this evidence as highly relevant if the transfers reduced the amount of child support Martin would be obliged to pay.

Martin testified he transferred one-half of his interests in each business to Linzy in exchange for one-half of the equity in a home she had previously purchased for $100,000 and which she testified was valued at in excess of $100,000. Linzy paid no cash for her interest in these partnerships, with the exception of her 25% interest in Custom Building which she purchased from a third partner. She became a partner in Custom Property Management, Custom Building, and Custom Construction on August 3, 1983, the day she and Martin were married. She became a partner in Custom Investments in 1987 and paid no consideration.

When Martin and Mary were divorced, they owned a one-third interest in Custom Investments and a one-quarter interest in Custom Building. Pursuant to their agreement, Mary held a lien on one-half of the profits from these businesses, reducing Martin's interests (insofar as any claim to the profits) to one-sixth in Custom Investments and one-eighth in Custom Building. Transferring one-half of these interests to Linzy means she obtained a one-twelfth interest in Custom Investments and a one-sixteenth interest in Custom Building.

Martin's affidavit of income and assets indicates Custom Investments has a net worth of $653,397 and Custom Building has a net worth of $114,879. However, Martin testified that when Custom Investments was appraised several years ago it was valued at $1,800,000. Linzy testified its value was approximately $2 million. There is outstanding debt attributed to this partnership in the amount of approximately $550,000. Because Linzy and Martin own only a one-third interest in Custom Investments, the additional partner owning the two-thirds interest would be responsible for a

larger proportion of this debt. Custom Building was appraised several years ago at approximately $460,000.

Linzy testified she had made capital contributions to the businesses in which she and Martin are partners. In 1988, she made capital contributions of approximately $45,000. She also stated her mother gave her less than $10,000 yearly, which she contributed to the partnerships, and that she sometimes contributed her commissions checks from selling real estate through Custom Realty Company. She works in all of the businesses.

The record also indicates Martin and Mary's other children had attended parochial schools. Although the minor child was also attending a parochial school, Martin was unwilling to contribute to this expense. At the close of the March 1991 hearing, the trial judge authorized written arguments by counsel.

The trial judge sent a letter to counsel on June 27, 1991, informing them she concluded modification of Martin's support payments was warranted. She also concluded monthly support and maintenance payments made by Martin to Mary could not be subtracted from his net income to arrive at the proper amount of monthly child support. She reasoned prior obligations of support and maintenance which were subtracted pursuant to section 505(a)(3)(g) of the Illinois Marriage and Dissolution of Marriage Act (Act) only included payments made in conjunction with a *different* marital relationship. Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3)(g).

She noted that although Mary had some certificates of deposit, savings and limited debt compared to Martin, Martin had a partnership interest in five businesses, the total equity interest of which was in excess of $1 million. She also indicated that although Linzy had made some capital contributions to the businesses, the value of the partnership interests transferred to her far exceeded her contributions.

The letter indicated the trial judge considered "the guidelines of [section] 505 [of the Act,] including the financial resources of the [p]etitioner and [r]espondent, the standard of living the child would have enjoyed had the marriage not been dissolved, and the educational needs of the child" in arriving at the modification award.

On October 22, 1991, the judge entered her order increasing Martin's support obligation. She concluded there had been a substantial change in circumstances warranting modification of the child support because when it was initially granted in July 1983, the child was five years old and the child was currently entering high school. The child will be 15 years old in August 1992. The judge

found Martin's gross monthly income for 1990 was $3,226.58. After subtracting Federal and State taxes, and health insurance costs, his net monthly income was $2,421.67. The 20% statutory minimum support obligation of this income was $485 monthly. See Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(1).

After considering the factors outlined in her June 27 letter to counsel, the judge increased Martin's support obligation to $650 monthly. The increase was made retroactive to January 1, 1991. Because of the parties' previous agreement and Martin's objection to the child attending a private school, Martin was not required to contribute to the child's attendance at this school. In October 1991, the judge stayed enforcement of the modified support order pending appeal. This stay was lifted, however, in April 1992.

## II. MARTIN'S NET INCOME

Martin initially argues the trial judge erred by not deducting from his monthly net income the monthly payments which he was making to Mary pursuant to their previous settlement agreement. He raises two alternative reasons why these payments should have been deducted before determining the proper amount of his monthly child support obligation: (1) the payments were prior obligations for maintenance pursuant to section 505(a)(3)(g) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3)(g)), or (2) the payments should have been deducted as reasonable expenditures for the benefit of the child and the custodial parent pursuant to section 505(a)(3)(h) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3)(h)).

A trial court's order modifying child support will not be overturned absent an abuse of discretion. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233; *In re Marriage of Keown* (1992), 225 Ill. App. 3d 808, 812, 587 N.E.2d 644, 647.

### A. *Monthly Payments Are Not A Prior Maintenance Obligation*

Section 505(a)(3) of the Act defines net income, and section 505(a)(3)(g) provides that prior obligations for maintenance paid pursuant to court order should be deducted from the noncustodial parent's total income to determine his or her net income. (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3)(g).) Martin argues the $1,000 monthly payments which he made to Mary as the agreed one-half of the income distributed from his business interests, and what he characterizes as a "miscellaneous alimony" payment monthly of $259, should have been deducted from his gross income to determine his net income. We presume the $259 figure represents the

$239.58 monthly payment for country club dues and life insurance to secure the court-ordered support provisions in the dissolution order. These payments, he contends, represent prior maintenance obligations.

The $500 monthly payment to Mary would have raised a thornier issue. However, the record indicates Martin's $1,000 monthly payments to Mary represented 50% of the profits generated in the businesses in which Mary relinquished her partnership interest when the parties' marriage was dissolved. She was not receiving the monthly $500 payments because the business profits were twice as much each month. Martin does not argue that these payments should have been deducted from his gross income. We need not address whether these payments would have qualified as maintenance.

### 1. Payments Are Not A Prior Obligation

The trial judge disagreed with Martin's interpretation of section 505(a)(3)(g) of the Act and ruled that because this provision did not apply, the payments would not be deducted from Martin's gross earnings. She reasoned the payments did not accrue from a *prior* obligation because this deduction applied only when the maintenance and support obligations arose from a marriage other than the marriage before the court.

Martin directs us to the general principle that when terms in a statute are not defined, we should rely on their plain, ordinary and popularly understood meanings. (*Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450, 455, 557 N.E.2d 873, 875; *Union Electric Co. v. Department of Revenue* (1990), 136 Ill. 2d 385, 397, 556 N.E.2d 236, 241.) He contends the operative word in section 505(a)(3)(g) is "prior," which is defined as "[e]arlier; elder; preceding; superior in rank, right, or time." (Black's Law Dictionary 1193 (6th ed. 1990).) The payments at issue, according to Martin, arose from a prior obligation. They arose from a court order dated July 13, 1983. The child support modification order did not involve these payments, which Martin characterizes as "maintenance." He argues because they arose from a prior obligation of maintenance, they should have been deducted from his gross earnings.

Mary argues, assuming the payments were maintenance, they should not have been deducted from Martin's gross earnings because they did not arise from a *prior* obligation. She agrees with Martin that "prior" is the operative word in section 505(a)(3)(g) of the Act, but contends the legislature must have meant this provi-

sion to apply only when the obligation arose from a previous, unrelated marital action. If not, she contends, the provision would state only that obligations of support or maintenance should be deducted.

■ The monthly payments made by Martin to Mary were not *prior* maintenance obligations. To view them in that way would allow Martin to deduct *current* obligations owed in conjunction with the same marital dissolution in which modification of child support payments is being sought. If these payments were deducted from Martin's net income, Martin would be receiving a double credit for these payments. They would not be considered as net income and they would lower the potential support obligation for which he could be obligated.

This could not be the intent of the legislation. Rather, a deduction for support and maintenance obligations from a previous unrelated action assures that those payments are not imperiled by an increase in current obligations for support and maintenance. The trial judge correctly concluded that because section 505(a)(3)(g) did not apply to Martin's monthly payments to Mary, the payments could not be deducted from his calculation of net income.

### 2. Payments As Received are Not Maintenance

Mary further contends Martin incorrectly characterizes these payments as "maintenance." Rather, the portion of the proceeds from the parties' previous businesses was granted to her as part of an equitable property division in conjunction with the parties' dissolution. She also correctly notes the parties' settlement agreement states she *waived* any and all right and claim to maintenance.

■ Martin's reply brief notes the trial judge viewed the payments as maintenance and Mary did not raise an objection to this characterization. She has waived raising this argument. (*Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 467, 564 N.E.2d 1222, 1228; *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 229, 499 N.E.2d 1381, 1390.) Martin does not, however, direct our attention to the fact that in his written argument submitted to the trial judge, he *conceded* the periodic payments made to Mary were not maintenance. The argument included the following statement: "The money that is paid to her and deducted is not maintenance but a[n] obligation similar to a business debt."

We need not determine if the payments were maintenance because they were not a *prior* obligation which should have been deducted from Martin's earnings. If Mary had not waived the argument, and if this issue was a controlling factor to the outcome of

this case, we would conclude the $238.59 and $1,000 monthly payments made to Mary were not maintenance.

Martin argues the $1,000 and $238.59 payments were maintenance and directs us to Mary's 1989 tax return, which characterized the payments as alimony, as evidence she too viewed them as maintenance. He also contends that portion of their settlement agreement which specifically stated that Mary was waiving all rights to present and future maintenance was "mere specious" language.

■ However, the parties' intent, as evidenced by the language in their settlement agreement, controls whether these payments constitute maintenance or are made in lieu of a property settlement agreement. *In re Marriage of Gallentine* (1991), 216 Ill. App. 3d 1067, 1071, 576 N.E.2d 575, 577; *In re Marriage of Pitts* (1988), 169 Ill. App. 3d 200, 208, 523 N.E.2d 664, 669.

Mary testified the country club fees were made to benefit the minor child, who actively participated in swimming, and other activities at the club, and the additional payment for life insurance was to assure Martin's support obligations would be met. The $238.59 would not have been viewed as maintenance.

The $1,000 payments Mary received are more akin to those arising out of a property settlement in lieu of maintenance where a spouse receives a lump sum award, sometimes payable in installments, in consideration of the spouse's release of the marital rights, including periodic maintenance. *In re Marriage of Rowden* (1987), 163 Ill. App. 3d 869, 871-72, 516 N.E.2d 1041, 1044; *In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 994, 431 N.E.2d 1, 9.

The parties' settlement agreement states the 50% of the profits from the businesses received by Mary was to be credited against Mary's $500 monthly periodic payments. It also stated that Mary waived all rights to maintenance. The payments made to her which represented profits from the businesses were made to her in consideration of her transfer of her partnership interests in the businesses.

■ The trial court correctly concluded the payments made to Mary monthly should not be deducted as prior maintenance obligations. Had the issue been fully considered, the trial judge should have concluded that the $1,000 and the $238.59 monthly payments were not maintenance payments. No error occurred in calculating Martin's net income to determine his minimum child support obligation.

### B. Monthly Payments Are Not Reasonable Expenditures

■ As an alternate reason Martin contends his monthly payments to Mary should have been deducted from his gross earnings, he argues these payments represent reasonable expenditures for the benefit of the other parent and the child pursuant to section 505(a)(3)(h) of the Act. This section authorizes the court to deduct from the noncustodial parent's net income:

"Expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income, medical expenditures necessary to preserve life or health, reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts." Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3)(h).

Martin contends if the payments are not maintenance, they must be viewed as reasonable expenditures for Mary and the child's benefit because Mary relies on this income to meet everyday living expenses. Mary contends these payments cannot be viewed as "expenditures," but should be characterized as court-ordered payments to which she is entitled.

■ The legislature could not have intended Martin's monthly payments to Mary to be deducted pursuant to section 505(a)(3)(h) of the Act. This provision would apply when the noncustodial parent *voluntarily* contributes to necessary expenses which he or she is not already obligated to contribute to or pay for. The trial judge did not err by failing to deduct, as "reasonable expenditures," Martin's court-ordered monthly payments to Mary. See Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3)(h).

### III. Downward Deviation Not Warranted

Martin argues the trial judge abused her discretion by not deviating downward from the statutory support guidelines. (Ill. Rev. Stat. 1991, ch. 40, par. 505.) He contends the judge did not properly consider the most relevant factors, the financial resources and needs of the custodial and the noncustodial parents. He contends the support modification order requiring him to pay $650 monthly depletes him of 62% of his disposable monthly income. The judge abused her discretion because the order requires that he meet his living expenses with $389 monthly while Mary has approximately $2,000 in disposable income monthly.

Mary contends the trial judge properly considered all relevant factors in modifying child support. She notes the judge expressed

concern about the possibility Martin transferred some of his business interests to diminish the support he could be obligated to pay. The trial judge also concluded although Martin's current spouse had made some capital contributions to the businesses, the value of the partnership interest transferred to her by Martin far exceeded any contributions made by her. The trial judge also noted Martin held a partnership interest in five business entities in which he had a total equity interest in excess of $1 million.

Testimony established Mary's monthly income was approximately $2,000. Martin's calculations of his monthly income is based only on his *pro forma* tax form. He also subtracted his monthly payments to Mary before reaching the $389 figure. Martin's own affidavit of income submitted into evidence listed his net monthly income at $2,621.67. The trial judge concluded Martin's net monthly income was $2,421.67.

■ In determining adequate child support, a trial court should consider the following relevant factors: the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the parents been married, the physical, emotional and educational needs of the child, and the financial resources and needs of the noncustodial parent. Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(2); *Keown*, 225 Ill. App. 3d at 812, 587 N.E.2d at 647.

The trial judge's order indicates that before modifying Martin's support obligation, she considered the factors outlined in section 505 of the Act, including the parties' financial resources, the standard of living the child would have enjoyed had the marriage not been dissolved, and the child's educational needs. She also considered that Martin had transferred one-half of his partnership interests, which in effect reduced his reportable monthly income. In addition, Martin was not required to contribute toward the cost of sending the minor to a private high school because the trial judge noted Martin thought the minor should not attend a private school. The record indicates the trial judge properly considered the factors outlined in section 505.

### IV. TRIAL COURT PROVIDED EXPRESS FINDINGS

■ Martin next argues the trial judge abused her discretion because she did not provide express reasons for setting child support in an amount higher than the statutory minimum guidelines of section 505(a)(1) of the Act. Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(1).

Mary contends express findings are not mandated and the judge's order was reasonable in light of the factors she adequately

considered. She also directs us to the 1992 practice notes accompanying section 505 of the Act, which indicate that although express findings are required when the court enters an award below 20% of the noncustodial parent's income, they are not necessary if the court exceeds the guidelines when awarding support. Ill. Ann. Stat., ch. 40, par. 505, Supplement to Historical & Practice Notes, at 176 (Smith-Hurd Supp. 1992).

Section 505(a)(2) of the Act previously stated express findings were not required when the court exceeded the guidelines. (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(2).) The provision currently requires express findings whenever the court deviates from the guidelines. Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(2) (as amended by Pub. Act 86–1184, art. 3, §3–1, eff. July 1, 1990 (1990 Ill. Laws 1707, 1723-24)).

We initially note Martin waived the issue of the trial judge's failure to make express findings because he did not raise the issue to the trial judge. *In re Marriage of Harper* (1989), 191 Ill. App. 3d 245, 246, 547 N.E.2d 574, 575, citing *In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279, 545 N.E.2d 731, 733.

Moreover, Martin's argument that the trial judge did not make express findings fails. Although she could have been more specific in outlining her reasons, the June 27 letter to counsel and the order indicate the factors the judge considered and sufficiently expressed the reasons she modified Martin's support obligation to $650 monthly.

## V. Child Support Greater Than Minimum Support Guidelines Was Warranted

■ Martin next argues the trial judge's upward deviation from the mandated minimum support guidelines, *i.e.*, ordering him to pay $650 in child support monthly, was error because it was against the great weight of the evidence. He contends his interests in the businesses should not have been considered in determining the proper amount of support because Mary's interest is equivalent to his interest and therefore cancels out any relevancy of these businesses to the issue of support. In his reply brief he includes an additional argument that the court ignored a crucial fact that pursuant to Mary and Martin's settlement agreement, Mary holds a 50% interest in his interests in the net worth of the businesses.

As already noted, his partnership interests were relevant to investigate whether the transferring of his interests could have decreased his potential child support obligations. The testimony estab-

lished Linzy did not pay cash to obtain one-half of Martin's interests in Custom Investments and Custom Building. Further, her contributions to the partnerships were minimal compared to the equity she obtained through the partnership interests.

Although Mary is entitled to 50% of the assets if the businesses are sold, the important factor is the effect of Martin's transfer of his partnership interests. By lowering his partnership interests, Martin has less reportable income. This could have decreased the amount of his child support obligations.

The trial judge did not abuse her discretion by considering Martin's partnership interests. Although, as Martin argues, Mary is entitled to 50% of his profits, the additional considerations warranted evaluating his interests. Moreover, this is not the only factor the trial judge considered in ordering Martin to pay more than 20% of his net income for child support. The trial judge considered additional factors outlined in section 505(a)(2) of the Act. Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(2).

### VI. SPOUSE'S INCOME WAS RELEVANT

Martin also argues evidence about his current spouse's income and net worth should not have been considered. He cites *Keown* (225 Ill. App. 3d at 813, 587 N.E.2d at 647) as support for this contention. Mary agrees Linzy's income is not directly relevant to the support determination. She contends, however, that because Martin and Linzy are partners in business ventures, it was relevant to investigate her resources, particularly those which were transferred to Linzy by Martin.

In his reply brief, Martin again contends consideration of Linzy's income and net worth was error. He proceeds, however, to specify the percentage ownership Linzy holds in each partnership in which she participates with Martin. He concludes the court could not attribute impropriety to the fact he transferred partnership interests to Linzy because he had transferred one-half of his partnership interests to her in exchange for him receiving a one-half interest in her home, in which she had over $100,000 equity.

Martin's counsel called Linzy to testify on Martin's behalf. Evidence of her net worth and earnings was elicited, in part, by Martin's counsel. Although not noted by Mary, Martin's counsel did not object to this questioning during the hearings. Martin has waived raising this as error because he did not complain to the trial judge. *Meerbrey*, 139 Ill. 2d at 467, 564 N.E.2d at 1228; *Smith*, 114 Ill. 2d at 229, 499 N.E.2d at 1390.

■■ Although Martin waived review of this alleged error, the trial judge did not abuse her discretion by admitting this evidence. Linzy sought, and was granted, permission to intervene in the modification proceedings to protect her own financial interests, which she conceded were commingled with Martin's. Without testimony about Linzy's income and net worth, the trial judge could not determine whether Martin's transfers were proper and what interests were Linzy's and, therefore, not subject to consideration in determining Martin's child support obligation. The trial judge had no alternative mechanism for determining Martin's financial resources than to also consider what financial resources Linzy claimed were hers.

Moreover, in *Keown* we noted a current spouse's income can be equitably considered to determine whether the child support obligation would imperil the supporting parent and his or her spouse's ability to meet their needs. (*Keown*, 225 Ill. App. 3d at 813, 587 N.E.2d at 647.) Martin fails to present any evidence the trial judge inappropriately considered Linzy's resources.

## VII. Conclusion

The trial judge did not abuse her discretion by ordering Martin to increase his support obligation from $250 to $650 per month. She correctly concluded the monthly payments made by Martin to Mary, whether they were maintenance or payments in lieu of the parties' property settlement, should not be deducted from Martin's net income before determining the 20% minimum amount he was obligated to pay as child support.

In addition, she entered express findings, and did not err by exceeding the statutory 20% minimum support guideline. She also appropriately considered Martin's current spouse's financial resources because they were commingled with Martin's and because Linzy was allowed to intervene in the proceedings to protect her claimed financial resources.

Affirmed.

STEIGMANN and LUND, JJ., concur.